Nov. Term, 1844.

Scott
v.
M'Murran.

---

## Scott and Others *v.* M'Murran and Others.

Bill of foreclosure. A mortgage of real estate, given to secure the payment to the complainant of a *bona fide* debt, was not recorded until about two years and a half after it was executed. After its execution, and before it was recorded, the mortgagor contracted debts with other persons, for which, but not until after the mortgage was recorded, judgments were obtained. There was no satisfactory evidence, that the delay to have the mortgage recorded, proceeded from any collusion between the mortgagee and mortgagor to de-

fraud the subsequent creditors. *Held*, that the mortgagee was entitled to the priority.

Nov. Term,
1844.

SCOTT
v.
M'MURRAN.

Tuesday,
December 3.

APPEAL from the *Vigo* Circuit Court.

SULLIVAN, J.—Bill of foreclosure. The bill states that one *William M'Murran* was indebted to *William C. Linton* in his lifetime in a large sum of money, to wit, the sum of 3,000 dollars, which remained unpaid at the death of said *Linton;* that on the 20th of *April*, 1838, *M'Murran* executed to *Freeman H. Linton* and others, infant heirs of *William C. Linton*, his three several promissory notes for the amount due, and, to secure the debt, also executed to them, on the 12th of *October*, 1838, at the request of *Lucius H. Scott*, their guardian, a mortgage on the property described in the bill, which was duly acknowledged on the next day, and, on the 9th of *April*, 1841, was recorded in the recorder's office in the county of *Vigo*. On the 20th of *November*, 1840, *Scott*, as the guardian of *Linton's* heirs, and *M'Murran* had a settlement of accounts, and it was found that the latter was, after deducting sundry payments, still indebted in the sum of 2,085 dollars and 34 cents; whereupon the original notes were given up to *M'Murran*, and three other notes, one for 1,000 dollars, one for 835 dollars and 34 cents, and another for 250 dollars, were given, payable to *Scott*, guardian, &c., as evidences of the balance still due of the original debt. The bill states the death of *Freeman H. Linton*, intestate and without issue, and the intermarriage of *Scott* and *Eliza Linton*, the widow of *William C. Linton*. It avers the non-payment of the debt found due by the settlement above stated, and prays a decree against *M'Murran* for the debt, and a foreclosure, &c.

At the *November* term, 1841, of the *Vigo* Circuit Court, *Chauncey Rose* and *Henry Rose*, who represented themselves to be judgment-creditors of *M'Murran*, petitioned the Court to be made defendants to the bill. The prayer of the petition was allowed, as it seems, without objection, and they thereupon filed their joint answer. They say that said mortgage was fraudulent in its inception, and that it was fraudulently concealed, from its date until it was recorded on the 9th of *April*, 1841, from the public generally, and especially from those doing business with *M'Murran* and extending

Nov. Term, 1844.

Scott
v.
M'Murran.

credit to him, so as designedly to deceive and defraud them. They say that on the 9th of *November*, 1840, *Chauncey Rose*, under the belief that *M'Murran* was the true and *bona fide* owner of the real estate described in said mortgage, and that it was unincumbered, indorsed for him to the amount of 700 dollars, which sum he has been obliged to pay, and that *M'Murran* became indebted to him also on other accounts. They say that *M'Murran* also became indebted to *Henry Rose*, by promissory note bearing date *June* the 4th, 1840, for the sum of 217 dollars, at the date of which he also was ignorant of said pretended mortgage, &c. They say that, being deceived by the fraudulent concealment of said mortgage, they omitted to use the remedies in their power to secure the debts owing to them, until, if the mortgage be permitted to stand, it is too late. They deny notice of the existence of the mortgage until it was furnished by the record, and say that they have obtained judgments, &c. *M'Murran* failed to answer, and to the answer of *C.* and *H. Rose* a special replication was filed. Depositions were taken, the substance of which is as follows:

*S. B. Gookins* swears, that he was present at the execution of the mortgage from *M'Murran* to the heirs of *Linton*, and was one of the subscribing witnesses to the deed. The mortgage was drawn by his partner, Mr. *Farrington*, according to dates, amounts, &c., furnished by *Scott* and *M'Murran*. Before *M'Murran* signed the mortgage, something was said about recording it. *M'Murran* objected to the deed going upon record, saying that he did not wish his wife to know of its existence. *Scott* insisted on recording it, and *M'Murran* refused to sign it until there should be some understanding "on the subject." After further conversation, *M'Murran* consented to execute the mortgage, and it was agreed between the parties, that it should be left with *Farrington*, *Wright*, and *Gookins*, attorneys at law, to be put upon record whenever they should think it necessary or expedient to do so. The notes also, which the mortgage was given to secure, were left with them. Payments were made by *M'Murran* from time to time, which were indorsed on the notes. One of the payments was a sum of money borrowed by *M'Murran* from the commissioners of the sinking fund.

Nothing was said by either of the parties about the mortgage until the 9th of *April*, 1841. Up to that date, witness considered *M'Murran* solvent, and believes he was generally so considered; he (the witness) had frequently indorsed for him in bank, and never knew him to be under protest until that date, and knew of no reason why the mortgage should be put upon record until that time. On that day, witness understood that *M'Murran* was about to make an assignment of all his property in trust for certain creditors, and being informed that the debt to *Linton's* heirs was not fully paid, he then delivered the mortgage to the proper officer to be recorded. Witness says, that the only objection *M'Murran* made to recording the mortgage was, that he did not wish his wife to know of it; he did not object to it for the reason that it might injure his credit.

*J. Farrington*, who drew the mortgage, knows nothing of the agreement between *M'Murran* and *Scott*, that it should then be recorded.

*D. Deming* swears, that, on the 22d of *May*, 1840, he acted as the agent of the commissioners of the sinking fund; that, on that day, *M'Murran* borrowed 500 dollars from that fund, and mortgaged a part of the same property that he had previously mortgaged to *Linton's* heirs. Witness was applied to by *L. H. Scott* to know if *M'Murran* could borrow money from the sinking fund. Witness replied that *M'Murran's* property was encumbered. *Scott* said no,—*M'Murran* could mortgage it. Witness then said, that if *M'Murran* would make out the papers, he could have the money. Witness further states, that *M'Murran's* mortgage to the sinking fund was in part filled up in the handwriting of *Scott*. He also identifies the mortgage, which is made part of his deposition.

The Circuit Court decreed, that the mortgage to *Linton's* heirs was fraudulent as to *C.* and *H. Rose*, and that they were entitled to a priority in payment, &c.

There is no proof to sustain the allegation in the answer, that the mortgage to *Linton's* heirs was fraudulent in its inception. It is very clear that there was a *bona fide* debt due to them, and, when the mortgage was executed, it was intended to secure that debt. If the defendants, *C.* and *H. Rose*, are entitled to relief, it is because an imposition has

been practised upon them by the collusion of *Scott* and *M'Murran*, which could not be guarded against by the exercise of ordinary diligence. The statute which provides for recording mortgages, and which was in force at the dates of the several transactions between the parties in this case, extends no protection to creditors, if that ceremony should be omitted. It provides, that if a mortgage shall not be recorded within 90 days after its execution, it shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for a valuable consideration, unless such deed or conveyance be recorded before proving and recording the deed, under which such subsequent purchaser or mortgagee may claim. Under the statute, it is not necessary to the validity of a mortgage that it be recorded at all. If the mortgagee omits to have it recorded, he runs the risk of losing his lien as against purchasers and mortgagees, and so he may hazard it as against a judgment-creditor, but as to all the world beside his lien is complete. If this case, then, were to be decided upon the statute, the complainants would be entitled to a decree, because the mortgage to them was prior in date, and was recorded before the defendants became judgment-creditors. Where parties have equal equities, he who is prior in time shall have priority of right.

There is a class of constructive frauds against which equity will relieve, and within which the defendants say this case falls. As, for example, where a person having a conveyance of land keeps it secret an undue length of time, and knowingly suffers a third person afterwards to purchase the land and to expend money upon it without notice of his claim. *In* such a case, the wrongdoer shall be the sufferer. But there must be something more than mere *concealment* to give the character of fraud to the transaction, for concealment may be compatible with entire innocency of intention. *Evans* v. *Bicknell,* 6 Ves. 174.—*Barnett* v. *Weston,* 12 Ves. 130.—*Tourle* v. *Rand,* 2 Bro. Ch. R. 650.—*Griffin* v. *Stanhope,* Cro. Jac. 454. This case, however, does not come within the class referred to, because the defendants set up no claim to the land, nor do they pretend that they made any contract with the mortgagor in reference to it. They say, that they became his creditors in confidence that he was the owner of

the lands which they afterwards found were mortgaged to
the complainants. But this is only saying that they reposed
in *M'Murran* a misplaced confidence. Suppose they had
loaned money to *M'Murran* under the same belief, and taken
a mortgage on the same lands, would not the first mortgagees
have had the preference, if they had caused their mortgage
to be first recorded, no matter at what length of time after
it was executed? They would, if the only objection to their
mortgage was mere delay to put it upon record.

We think the facts in this case do not amount to collusion.
Mr. *Gookins* is the only witness that explains the intention of
the parties. He says, that the mortgage was withheld from
record at the request of *M'Murran*, and to keep the transac-
tion from the ears of his wife. *Scott* consented to it, with
the understanding that it should be put upon record when-
ever it became necessary. By which we understand, that
he would not consent to any act that would hazard the debt,
and that the mortgage should be put upon record before any
other lien attached. It does not appear that any doubt was
entertained of *M'Murran's* solvency until the 9th of *April*,
1841, on which day the mortgage was recorded. On the
contrary, it is expressly proved that *M'Murran* was consi-
dered, until then, able to pay his debts; that *Gookins*, who
knew of the existence of the mortgage, indorsed for him, and
never knew him to be under protest until the day last named.
Indeed, the defendants in their answer say, that, had they
known the true condition of *M'Murran's* property, they
might have secured themselves. The testimony of Mr.
*Deming* is relied on to prove the fraudulent concealment.
But the only effect that *Scott's* conversation with *Deming*
can have, is to give to the mortgage to the commissioners of
the sinking fund, a preference over the first mortgage.

We do not think it necessary to inquire, to what extent
the rights of the infant mortgagees should be affected by the
acts of *Scott*, in delaying to have the mortgage recorded, or
in representing to *Deming* that *M'Murran* could mortgage
the property to the commissioners of the sinking fund. Even
admitting that his conduct in that particular was binding on
his wards, we still think there are wanting those evidences

of fraud, or gross negligence amounting to fraud, which would give to the creditors the preference they ask.

Upon the whole case, therefore, we are of opinion that the complainants have a prior lien on the property and are entitled to a decree.

*The Court* reversed the decree with costs, and rendered a decree conformably to the foregoing opinion.

*A. Kinney* and *S. B. Gookins*, for the appellants.

*W. D. Griswold* and *J. P. Usher*, for the appellees.