## BLAKEMORE *v.* TABER'S Executor.

LEASE—CHATTEL MORTGAGE—ESTOPPEL.—*A* and *B* executed a lease to *C*, of certain land for seven years, at an agreed rent, upon which *C* agreed to erect certain buildings and to carry on certain business, which buildings *C* should own and be entitled to remove at the end of the term, and, to secure the payment of the rent, said buildings were declared in the lease to be mortgaged to *A* and *B.* The latter signed and acknowledged said lease, on *May* 29, 1857, and *C* did so on *July* 9, 1857, at which time said buildings had been erected on said premises, and on *July* 10, 1857, it was recorded in the mortgage record of the county. *D* was subscribing witness to the execution of the lease by *C*, and, by an arrangement subsequently made between him and *C*, he became the prospective owner of the improvements to be erected by *C* on the land.

*Held*, 1.  That *D* was estopped by his own acts to deny the ownership of said lease and improvements by *C*, or his right to incumber them by liens, and all persons claiming under, or through *D*, were bound by that estoppel, as to liens created as above, unless they can show fraud or want of consideration.

2.  That *A* and *B*, to the extent to which they had the first lien on said improvements, under the terms of said lease, could enforce it by foreclosure, against *D*, and those claiming under or through him, said lease, as to said lien, being equivalent to a mortgage.

3.  That said lease in its character of mortgage, was not void for uncertainty, the property mortgaged being on the premises of the mortgagees, and to that extent in their possession and identified, and said mortgage being recorded.

4.  That foreclosure is the proper remedy for the enforcement of a chattel mortgage.

APPEAL from the *Cass* Circuit Court.

PERKINS, J.—Suit for rent, and to enforce a lien for its payment. Judgment below for plaintiffs. The suit was commenced in 1859.

On the 3d of *April*, 1857, *Hamilton* and *Taber* made a con-

Blakemore *v.* Taber's Executor.

tract in writing, leasing to one *Shoobridge*, a certain quantity of land adjoining *Taberville*, *Indiana*, for a term of seven years, upon the conditions that said *Shoobridge* erect on the land certain buildings, and carry on in them certain kinds of manufacturing, and that he should pay the taxes on said improvements, and should own them and have the right to remove them at the end of the term; and, further, should pay a certain annual rent for the land, to secure the payment of which, the said improvements, to be erected on the land by said *Shoobridge*, were declared, in said lease, to be thereby mortgaged.

*Hamilton* and *Taber* signed and acknowledged the lease on the 29th day of *May*, 1857. *Shoobridge* signed and acknowledged it on the 9th of *July*, 1857, and it was recorded on the next day, the 10th of *July*, 1857, in the mortgage record of the county. *Henry H. Euarts* was the subscribing witness to the execution of the lease by *Shoobridge;* and, at the time the latter executed, and *Euarts* witnessed it, both expected, as did, also, *Hamilton* and *Taber*, that *Shoobridge* was to be the owner of the improvements stipulated to be erected, and which were erected in the name of *Shoobridge;* he appears to have honestly been held out, at the time, as the prospective owner; but an arrangement was made afterwards between him and *Euarts*, by which his prospective ownership was extinguished, and, as between them, *Euarts* became the owner. This is clearly shown by the evidence.

Upon the foregoing facts, *Euarts*, having held out to *Hamilton* and *Taber* that *Shoobridge* was the proprietor of the lease, buildings, &c., is estopped, as against them, to deny such ownership, and the consequent power in *Shoobridge* to incumber them by liens; and all persons claiming under or through *Euarts*, are bound by that estoppel, as to liens created as above, unless they can show fraud, or want of consideration, on the part of *Hamilton* and *Taber*, in the transaction. No such showing is attempted.

*Hamilton* and *Taber*, then, to the extent that they had the first lien, could enforce it, upon the property specified in the lease, against *Euarts* and those claiming through him, equally as efficiently as they could have done, had the lease been signed by *Euarts* himself.

It appears that on the 16th of *May*, 1857, *G. W. Blakemore* sold *Henry H. Euarts*, hereinbefore mentioned, a tract of land, three and a half miles south of *Logansport*, and took his notes for the purchase money. The notes were not paid, and judgment was obtained upon those first due, on the 30th of *October*, 1857. Execution was issued upon the judgment, and levied upon the property put upon *Hamilton* and *Taber's* land, under the lease above mentioned, as the property of said *Euarts;* and the question is, is the property subject to the lien asserted by *Hamilton* and *Taber* for rent? If it would be so subject, had the lease been made to, and signed by *Euarts*, instead of *Shoobridge*, it is so subject now, because *Hamilton* and *Taber* took the lien, such as it is, on the faith of a representation by *Euarts* to them, that the property belonged to *Shoobridge*.

Suppose, then, the improvements had been made by *Euarts*, under a parol agreement for such a lease as appears in this case, between him, instead of *Shoobridge*, on one part, and *Hamilton* and *Taber* on the other part; suppose, on the 9th of *July*, after the improvements had been so erected, such a lien as that actually appearing in this case, had been executed between *Euarts* and *Hamilton* and *Taber*, and had never been recorded, but that *Blakemore*, and all under him, had been actually notified of the existence of the lease, and its contents; could *Hamilton* and *Taber* have retained the lien on the property against an execution in favor of *Blakemore*, on a judgment rendered and execution issued after the full execution and such notice of the lease? This question is asked upon the hypothesis that the instrument called a lease, in the

·case, does not amount, also, to a mortgage. . Story, 2d volume of Eq. Jur., sec. 1231, speaking of equitable liens, says:

"Indeed, there is generally no difficulty in equity in establishing a lien, not only on real estate, but on personal property, or on money in the hands of a third person, wherever that is matter of agreement, at least against the party himself, and third persons, who are volunteers, or have notice; for it is a general principle in equity, that, as against the party himself, and any claiming under him voluntarily, or with notice, such an agreement raises a trust."

But we shall pass this point, because we think the lease contains a mortgage by *Shoobridye,* and by *Euarts,* through *Shoobridge,* to *Hamilton* and *Taber* of the improvements, &c., named. It contains this clause: "And for the purpose of securing the prompt payment of the rent, and the punctual performance of the stipulations of this lease, [from *Hamilton* and *Taber* to him,] said *Shoobridge* [said *Euarts* agreeing thereto,] hereby mortgages and warrants said buildings and machinery to the party of the first part, [said *Hamilton* and *Taber.*]"

This mortgage clause was signed on the 9th of *July,* 1857, as we have seen, by *Shoobridge,* being after the improvements were placed upon the leased premises, was duly acknowledged, and recorded on the next day, the 10th of *July.* As it was a mortgage by *Shoobridge* to *Hamilton* and *Taber,* the latter properly had it recorded in the book of mortgages. There was where third persons would look for such incumbrances. As to third persons, the case would stand thus. *Prima facie,* the improvements would belong to *Hamilton* and *Taber,* because of their ownership of the land on which they were situated. On inquiry, it would be found that they were owned by the lessee, but the lease itself, which disclosed the lessee's title, would, also, show the lien of the lessors, and, in

addition, on examining the mortgage record, it would be again disclosed.

The mortgage, then, being valid, *Blakemore's* course was to sell, so far as *Euarts* was concerned, the property covered by it, subject to the mortgage. This follows from the fact that the mortgage was the elder lien. *Lord* v. *Fisher*, 19 Ind. 7. See., also, 18 Ind. 250. Our statute treats chattel-mortgages, in this respect, like mortgages upon real estate. 2 G. & H. p. 240, sec. 436.

It is objected that the mortgage is void for uncertainty. But when we consider that the property mortgaged was all on the premises of the mortgagees, thus, to some extent, in their possession, and that the mortgage covered all the buildings and machinery, which, being, as we have said, on the land of the mortgagees, were thus separated from all other property, and identified; and the further fact that *Blakemore*, and all others concerned, had notice, &c., we think the mortgage can not be held void, or inoperative as to any of the described property for uncertainty.

It is also insisted, that a suit by foreclosure will not lie upon a chattel mortgage. As our statute places chattel mortgages on the footing of mortgages upon real estate, in this, that it recognizes the legal title, the equity of redemption, as remaining in the mortgagor, and the mortgagee as having but a lien, it follows that a foreclosure is the proper mode of proceedure to enforce the lien, and extinguish the equity of redemption. 3 Wend. 500; 11 Ind. 398; 13 Ind. 141; Will. on Per. Prop. side p. 45; Same on R. Prop., do. 357. See, as bearing on this case, *Chandler* v. *Caldwell*, 17 Ind. 256. Also, see 14 Ind. 231; 5 *id.* 293; 2 *id.* 663; 7 Blackf. 284; 8 *id.* 420, 1 Ind. 356; 11 Ind. 319; 2 Story s Rep. 630; Smith's Mer. L. 693. These last citations are upon the power to mortgage property, not in existence at the time. See, also, 8 Ind. 364.

In the case at bar, it will be observed, the seven years for

Lafferty *v.* Jelly.

which the mortgage was to run, had not expired at the commencement or trial of the suit; and surely *Blakemore* could not complain that the remedy by foreclosure was adopted. And, under our statutes, and upon general principles of equity, we see no reason why the general rules of foreclosure, as to mortgages, should not be applied in cases of chattel mortgages. See 2 Hill, on Mort., pp. 346, 478, 504, as to chattel mortgages.

But it further follows, from the above propositions, that in selling the mortgaged property, on *Hamilton* and *Taber's* judgment of foreclosure, on failure of *Blakemore*, or others interested, to pay the money found due on it, the Court, or sheriff, might cause such part of that property as had not been sold, or incumbered by later mortgages, to third persons, to be first disposed of. *Aiken* v. *Bruën*, 21 Ind. 137.

. *Per Curiam.*—The judgment below is affirmed, with costs.

*L. Chamberlain* and *George W. Blakemore*, for the appellant.

*D. D. Pratt*, for the appellees.