## CONNER v. The President and Trustees of NEW ALBANY.

| 1b | 43 |
| 134 | 337 |
| 1b | 43 |
| 141 | 7 |

Grants noted on recorded town plats, operate, by virtue of the statute, as
general warranty conveyances to the town, to individuals, or to the public,
according to the intention of the grantor.

The designation of a street on the recorded plat of an incorporated town,
operates as a grant of a highway to the public. But were it an exclusive
grant to the corporation, and the street on a river, it would not vest such
a right to the soil, as would authorize the establishment of a ferry under the
statute.

ERROR to the *Clark* Circuit Court.—This was a suit in E-
quity by the president and trustees of *New Albany* against *John
Conner*. The bill stated that the complainants were the owners
of a gore of land in the town, by virtue of the town plat record-
ed by the original proprietors; that the land was on the *Ohio*
river, where it was their intention and right to have a ferry es-
tablished; that *Conner* without owning the land on the river,
had unlawfully obtained a ferry, in using which he must neces-
sarily break and pass over the complainants' close; that he had
done great injury to the land by digging the soil, &c. Injunc-
tion prayed, &c. On the filing of the bill, the defendant below
was enjoined from the use of his ferry until his right thereto
should be determined by a suit at law, which the complainants
alleged they had instituted against him for that purpose.—*Con-
ner*, in his answer, alleged that the complainants had no title to

*Saturday,*
*November 6.*

Nov. Term,
1819.

CONNER
v
NEW ALBANY

the land described in their bill; that a public street of the town 100 feet wide, ran between his lot where his ferry was established, and the river; that the suit at law, then determined against him, had in no respect determined his right to the ferry, which had been legally established.—On the final hearing of the cause, the injunction was made perpetual by the Circuit Court.

HOLMAN, J.—There are a variety of grounds assumed for reversing this decree. The most conspicuous of which is the suggestion, that the complainants have shown no right, or title whatever, to any land in *New Albany*, on the *Ohio* river, which would entitle them to the establishment of a ferry; and consequently, could not interfere with *Conner's* establishment. The complainants do not claim by virtue of any conveyance, other than the recording of the town plat of *New Albany*, under the operation of the act of assembly for recording town plats. The first act on this subject, affecting this case, was approved the 5th of *December*, 1811 (1). It is, perhaps, under this act that the complainants claim. Although, from the exhibition of the town plat, it does not appear when it was recorded, yet, as the statutory provisions under which they claim, have remained substantially the same, from the passage of the act of 1811 to the present time, the time when the plat of *New Albany* was recorded is not material. The first section of this act provides, that the proprietor of any town shall cause a true copy of the plan thereof, with the public ground, streets, lanes, and alleys, with their width properly marked, to be recorded. The second section enacts, that any grant to the public, grant or purchase to or by any individuals, marked or noted as such, shall be considered as a general warranty to the public, or such individuals, for the uses and purposes intended by the donor. · This act may be considered as vesting in the town of *New Albany*, and consequently in the complainants, as president and trustees thereof, (they having become incorporated, agreeably to the provisions of the act of assembly on that subject,) all the property granted to them by the original proprietors, and marked as such, on the plan of said town. On inspecting the plan, or that part of it which borders on the *Ohio* river, we perceive no special grant whatever designated, corresponding with the claim set up in the complainants' bill. The gore of land there claimed, is not

distinguished from *Water* street, which runs between the build-
ing lots and the river; and that part of the answer, which de-
nies the existence of any such land, other than *Water* street, ap-
pears to be correct. Or if there is such land, it has never been
granted to the town of *New Albany*. It appears, therefore, ve
ry clearly, that the complainants have shown no proper
which they have any title, on the river margin of the tow
cept what they own in *Water* street. It becomes, then
important inquiry, to know what property they own
street. A public street in a town is a public highway.
sition is too universally admitted to require authority to su
it. A public highway is, then, granted by the original p
etors, to the town of *New Albany*, 100 feet wide, running th
whole length of upper and lower *Water* streets, by its being de-
signated as a street of that width in the plan of said town by the
proprietors, and recorded as such. And this grant of a public
highway, is warranted to the grantee, or grantees, by the ope-
ration of the before mentioned act of assembly. But that act
will not authorize us to extend the grant beyond the intention
of the grantors. The universal acceptation of the word *street*,
thus used, as being synonymous with a highway, or common
thoroughfare, will govern this grant, and fix the purpose for
which it was intended. But to whom was this grant made? To
the public, or the town of *New Albany*? If to the town of *New
Albany*, it should have been so expressed, unless it is here ne-
cessarily implied. But no such necessary implication arises;
for that which is granted to *New Albany* cannot be public, in
the unqualified sense of the word; nor can that which is grant-
ed to the public, be in any sense the exclusive property of *New
Albany*. A grant of a public street or highway, through either
town or country, cannot be considered otherwise than as a grant
to the public. It confers no exclusive right; but, *ex vi termini*,
absolutely excludes the idea of private appropriation. From
these premises the conclusion is unavoidable, that the complain-
ants have no exclusive property in *Water* street. But even if
it should be admitted, that the grant of this street was made to
the complainants, for the sole use of the town as such, it will
not alter this case in their favour. A way, whether public or
private, whether styled a road, or a street, leading through
town or country, is an incorporeal hereditament. It is not the
land, nor an unqualified use of it, but a privilege of passing over

it. If then, the citizens of *New Albany*, under the direction of the complainants, enjoyed this right, or privilege, *exclusively*, it would not give the right of soil they contend for in their bill, nor confer such a right of property as would enable them to obtain the establishment of a ferry, under the laws of this state; those laws contemplate an ownership of land as an absolute requisite.

act providing for the incorporation of towns, approved of *January*, 1817, section 8, gives the president and trustees a town, thus incorporated, the authority to keep the s in repair, remove nuisances, &c. (2). But this power, applying to the 13th section of that act, is limited to the building lots in said town, beyond which bounds, it appears, the ferry of *Conner* is established. But if he, in the use of his ferry, or otherwise, should obstruct the said street, within the bounds of the corporation, they have a right to take such measures, consistent with the laws regulating highways, as will secure them in the full enjoyment of their privilege in said street. But the powers thus granted to them, could not possibly authorize such proceedings as the present. Nor is this right of an exclusive ferry, or any right of ferrying whatever, necessary for enabling them to carry into full effect all their corporate powers; nor do they stand in need of extraordinary aid, in securing the full, free, and uninterrupted enjoyment of their streets, lanes, and alleys, as contemplated by the several acts of assembly on the subject.

Thus, it appears, that in what position soever we place this case, it devests the complainants of all claim to the interference of a Court of Chancery in their favour, either by enjoining, or in any way interfering with the ferry of *Conner*. Nor is it material, in this case, whether *Conner's* ferry was established with, or without authority, or whether it was ever established at all.

*Per Curiam.*—The decree is reversed and the bill dismissed, with costs.

*Nelson*, *Hurst*, and *Moore*, for the plaintiff.
*Dewey* and *Raymond*, for the defendants.

(1) Ind. Terr. Stat. 1811, p. 8.—Acc. Ind. Stat. 1823, p. 412.

(2) Ind. Stat. 1816, p. 125.—Vide Ind. Stat. 1823, p. 414.