McGoldrick *et al. v.* Slevin *et al.*

---

McGOLDRICK ET AL. *v.* SLEVIN ET AL.

·PRACTICE.—*Failure to Demur.—Assignment of Errors.*—A failure to demur to a complaint does not waive the right to call in question the jurisdiction of the court over the subject of the action and the sufficiency of the facts stated in the complaint; but to raise such questions for the first time in the Supreme Court, there must be an assignment of error that the court below did not possess jurisdiction of the subject-matter of the action, and that the complaint does not state facts sufficient to constitute a cause of action.

INSOLVENT DEBTOR.— *Judgment Against.*—An insolvent debtor contemplating an assignment may enter an appearance to a complaint and allow judgment to go, on proof, for a just debt; upon which an execution may issue, under and by virtue of which the goods of the debtor may be seized and sold.

SAME.— *Judgment Creditors of Insolvent Debtor.*—Such judgment creditors have liens prior and paramount to the claims of other creditors who have no judgments, and are entitled to have their judgments paid in full, and cannot, on the application of other creditors, be enjoined from collecting their judgments.

SAME.—Such other creditors cannot, on their application, have a receiver appointed to take possession of and sell the property of the judgment debtor, where it is not shown that there is danger of the judgment debtor's fraudulently disposing of his property.

INJUNCTION.—*In what Cases Granted.*—Injunctions are granted to restrain the commission of acts threatened or anticipated, injurious to the plaintiff, pending litigation, and not where the matter complained of has been consummated either before or after the action is commenced, and before judgment.

McGoldrick *et al. v.* Slevin *et al.*

SAME.—Where a debtor is in the open and visible possession of property, and it is not shown that there has been a fraudulent disposition of any of the property, or that the debtor threatens so to dispose of it, there is no cause to restrain the debtor from selling or disposing of the property.

From the Tippecanoe Circuit Court.

*H. W. Chase* and *J. A. Wilstach,* for appellants.

*S. A. Huff, B. W. Langdon,* and *J. S. Pettit,* for appellees.

BUSKIRK, J.—The facts necessary to an intelligible understanding of the questions arising in the record for our decision are substantially the following:

The complaint was filed May 11th, 1868, by J. and J. Slevin & sons, wholesale dry goods merchants of Cincinnati, against Margaret McGoldrick and husband, G. H. and H. McFadden, Rudolph S. Ford, Joseph Sheern, and Ellen Cox. It contains the following allegations, verified by affidavit of the plaintiffs' agent: That Margaret McGoldrick, formerly McHugh, prior to April 11th, 1864, was engaged in the retail dry goods business in Lafayette, and between that time and November 1st, 1867, when she intermarried with Patrick McGoldrick, she became indebted to the plaintiffs, for merchandise purchased for her business, three thousand nine hundred and sixty-one dollars and eighty-five cents, which was unpaid; that at the time of her marriage she had a stock of merchandise worth eleven thousand dollars, which, with the exception of what she disposed of in the ordinary course of business, was still in her control, and she was still, with the consent of her husband, engaged in trade; that she was indebted to other persons besides the plaintiffs, about eight thousand dollars, all her debts being for merchandise bought for her business, and being for goods then on hand; that she was indebted to defendants, G. H. and H. McFadden on like account, to defendant Joseph Sheern for furniture, to defendant Ford for rent of store, and to defendant Ellen Cox, for services as clerk; that Patrick McGoldrick, the husband, had no means and relied upon his wife's business for his and her support; that the stock of goods was not worth over seventy-five per cent. of

the debts; that about the 11th of April, 1868, Mrs. McGoldrick was in Cincinnati, where the most of her creditors resided, and proposed to adjust her debts; that she represented her merchandise as worth eleven thousand dollars, the accounts due her at from two thousand five hundred to three thousand dollars, and cash five hundred dollars; that she made an engagement to meet her creditors at 4 P. M., on the 18th of April, but left Cincinnati and returned to Lafayette, and on Monday, the 20th of April, four complaints were filed against her in the Tippecanoe Civil Circuit Court, one in favor of defendants G. H. and H. McFadden, one in favor of defendant Ford, one in favor of defendant Cox, one in favor of defendant Sheern; that said defendants Margaret and Patrick McGoldrick appeared in open court, "and waiving the issuing and service of process upon the said several complaints, suffered and permitted the parties plaintiffs to have judgments entered in said court against her and her husband," for the following sums:

| | | | | | |
|---|---|---|---|---|---|
| In favor of the McFaddens | – | – | | | $276.46 |
| " " Ford | – | – | – | | 166.66 |
| " " Sheern | – | – | – | | 141.50 |
| " " Cox | – | – | – | | 100.00 |

That executions were immediately issued upon said judgments, at the instance of the attorneys for the several plaintiffs in those suits, who were alleged to be the attorneys for Mrs. McGoldrick in all matters relating to the adjustment of her liabilities; that on the same day on which those judgments were entered, said Margaret procured said attorneys (Chase & Wilstach) to address a letter to the plaintiffs, and like letters to the other creditors, upon the subject of compounding her debts at forty cents on the dollar, on fifteen, twenty, and twenty-five months, with interest, on secured notes; that the whole proceeding, including the taking of said judgments, issuing executions, writing the letter, etc., "was one entire transaction intended for the purpose of fraudulently intimidating the creditors to whom said letter was addressed, so as to induce them to adjust their demands

against the said Margaret on such terms of sacrifice as she might dictate;" that it was ordered as a part of the judgments, that they should be levied of the goods of both or either of the defendants therein; that said Margaret and her husband were attempting by means of said judgments and executions, to perpetrate a fraud upon said J. and J. Slevin & sons, and the other creditors of said Margaret, by not allowing them to have equal access to said stock of goods to pay their debt, which was the only fund for their payment; that there was danger of said stock's "being fraudulently disposed of with the further intent to hinder and delay the plaintiffs and the other creditors; that the conduct of said Margaret and her husband is an attempt to dispose of the said stock with intent to defraud the creditors of said Margaret," etc.; that to prevent such fraud, etc., it was necessary to appoint a receiver, etc., to take the management of the goods and sell the same under the order of the court. Prayer for an injunction against the sale of the goods by McFaddens, Ford, Sheern, and Cox, on their executions, for the appointment of a receiver, to take possession and dispose of the goods as the court should order, for judgment, and other relief. Upon this complaint being filed, the Slevins moved for the appointment of a receiver, and injunction as prayed for in the complaint.

Upon the hearing of the motion, the two affidavits of Margaret McGoldrick and one of John A. Wilstach were filed for the defendants, and one of Mr. Woodward for the plaintiffs.

The affidavit of Mrs. McGoldrick is lengthy, but in substance it states that she had been in Lafayette as a sole trader about four years; that she commenced with about four thousand dollars capital; that in 1864 and 1865 (during the war), her business was profitable; that in 1868 and 1867, she sustained heavy losses from a decline in goods and trade and the failure of her debtors; that in the spring of 1867, she was indebted to the McFaddens four hundred and thirty-three dollars, on account for goods purchased between May

4th, 1865, and May 9th, 1866; that they, becoming impatient, sent the claim to Chase & Wilstach, attorneys at Lafayette, for collection, whom she afterward employed to assist her in adjusting her affairs; that they presented the claim of the McFaddens June 30th, 1867, and demanded payment; that she explained to them her situation and promised that if they would not molest her with the claim, she would make payments at reasonable intervals thereon; that said attorneys communicated the facts to the McFaddens; that she only was able to pay one hundred and seventy-five dollars on the claim up to February 19th, 1868; that said attorneys made repeated applications for security; denies that she allowed the judgment to be taken in favor of the McFaddens to defraud the other creditors, but because she considered herself honorably bound to do so; states that the claim of Sheern for furniture was just, and that of Ford for rent of the store then in her occupancy, and of Ellen Cox for clerk hire, were wholly unpaid, and that it was necessary to pay Ford to retain possession of the store, and to pay Ellen Cox to retain her services, which were indispensable in business; that she did not intend to intimidate her creditors; that she went to Cincinnati to see her creditors and was there several days and had divers interviews with them for the purpose of arranging their debts; that the creditors presented a paper prepared by their attorney for her to sign, but that being away from home, and having no one to consult with, she asked time and agreed to meet the creditors at the store of M. Loth on Saturday, April 18th, 1868, at 9 A. M., but that being too unwell to meet her engagement promptly, went there at 10 A. M. and found the place closed (they being Israelites), and then went to R. D. Norris & Co.'s store, where she was told there was to be a meeting of her creditors that afternoon at 4 o'clock; denies that she promised to attend it; states that she inquired if the object was to have her sign the paper prepared by the creditors' attorney, and was told that it was, and then she told her informant she should not sign a paper, the legal effect of which

she did not understand, and on which she had no advice; that she returned to Lafayette and consulted with Chase & Wilstach, etc.; that they wrote the letter copied in the complaint upon suggestion of facts made by her; that she did not desire to intimidate her creditors; that her husband exercised no control over the goods; that only fifty-four dollars of addition to the stock had been made since her marriage, and that upon her own credit; that she was honestly holding the goods for the benefit of her creditors and intended applying the proceeds of sales to their debts, and protested against the appointment of a receiver, and states that her husband relied upon his own labor as a carpenter for a living, etc. In a supplemental affidavit, Mrs. McGoldrick states the effect of the contract prepared for her to sign in Cincinnati as she understood it, which she wanted to take to Lafayette for examination, and some facts showing an intention of the creditors to coerce her into measures; also, some details of the proposal for compromise of the debts.

The affidavit of John A. Wilstach states that the judgments of McFaddens, Sheern, Ford, and Cox, had been rendered at the time Woodward, in his affidavit, states "he was informed and believes it to be true that judgments against the defendants Margaret and Patrick    *    *    were not taken," etc.; that is, Wilstach shows that the judgments had been taken when the letter was written by Chase & Wilstach to the various creditors, proposing forty per cent. compromise, while Woodward states that he "was informed and believed" to the contrary.

J. M. Woodward's affidavit shows that he was agent of the Slevins, his examination of Chase & Wilstach's letter book, and his reading of the copy of their letter, which he was informed and believed was before the judgments therein referred to were taken; that Mrs. McGoldrick referred him to Chase & Wilstach as her counsel, etc.

The court upon this complaint and the affidavits enjoined the McFaddens, Ford, Sheern, and Cox from collecting their judgments from Mrs. McGoldrick's property, restrained and

enjoined her from selling or disposing of her goods or her accounts, and compelled her to deliver over all her property of every kind, including her books and accounts, connected with her business, to Henry Leaming, as a receiver, who gave bond and took the required oath, and who was ordered to appraise and sell the goods at public auction upon notice published in the newspapers, at not less than two-thirds the appraised value, or he could sell at private sale at not less than the full appraised value. Full directions were given to convert all the property into cash and collect all the debts of Mrs. McGoldrick, but she was to be allowed three hundred dollars if she claimed it.

The defendants excepted to each and every " of the foregoing rulings and orders of the court."

At the October term of court for 1868, sundry other creditors, being all but Slevin & Sons, McFaddens, Sheern, Ford, and Cox, made themselves parties plaintiffs, set out their demands, and claimed the benefit of the proceedings and to share the assets realized by the receiver. The parties agreed that the receiver should pay the taxes, but the defendants waived no right thereby. The court then ordered the payment of the taxes.

The receiver reported the appraisal of the goods at seven thousand and fifty dollars and eighty-five cents, and the accounts at two thousand one hundred and eighty-five dollars and three cents; that he had made sales, etc., to the amount of four thousand nine hundred and twenty-eight dollars and thirty-three cents; expenses one thousand one hundred and seventy-four dollars and ninety-three cents.

The defendants filed their several answers as follows :

Joseph Sheern's answer:

1. General denial.

2. As an answer and cross complaint, that on the 20th of April, 1868, he obtained a judgment against said Margaret McGoldrick and Patrick McGoldrick in said Tippecanoe Civil Circuit Court, for one hundred and forty-one dollars and fifty cents then due him, and costs, a copy of which was

set out; that an execution was immediately issued thereon, which was in the sheriff's hands when said receiver was appointed and the goods taken by him and sold under an order of the court; and that he asked the court to order his judgment paid in full out of the money in the receiver's hands.

Defendant R. S. Ford filed a similar answer and cross complaint, setting out his judgment at one hundred and sixty-six dollars and sixty-six cents, and asked similar relief as to its payment out of moneys in receiver's hands.

Defendants McFaddens filed a similar answer and cross complaint, setting out their judgment at two hundred and seventy-six dollars and forty-six cents, and asked the same relief as to the payment out of the moneys in the receiver's hands.

Defendant Ellen Cox having been paid off in full, her answer need not be noticed.

H. W. Chase and J. A. Wilstach were made parties on petition, to assert a mortgage lien on the goods for services, but as they were settled with, the same need not be noticed.

The court ordered that the payments to Ellen Cox and Chase & Wilstach should not affect any of the questions or issues theretofore made.

The defendants Margaret McGoldrick and husband answered, denying all the allegations of the complaint of all the several plaintiffs.

To the several answers and cross complaints of Sheern, Ford, and the McFaddens, the several plaintiffs, who were, under the order of the court, all the parties to the record except the above named defendants, filed their reply in denial.

The cause was then submitted to the court for trial, and a judgment rendered for the several plaintiffs for the amount of their claims as alleged in their several complaints, and for the defendants McFaddens, Sheern, and Ford for the amount of their judgments; that all the indebtedness was for goods,

etc., had by said Margaret; that her husband was insolvent; that said Margaret was insolvent when the judgments in favor of McFaddens, Sheern, and Ford were rendered, and that said last named judgments were entitled to no preference. The final report of the receiver was approved, and the net proceeds of the whole stock, etc., after payment of expense, was two thousand five hundred and thirty-two dollars and sixty-six cents for distribution, which was ordered, making less than twenty per cent. of the debts. The finding and judgment are very lengthy.

The defendants McGoldricks moved for a new trial on written causes :

1. Because the finding and judgment were contrary to law.

2. That the same were not sustained by the evidence.

The defendants Sheern, Ford, and the McFaddens filed a separate motion for a new trial, setting out the causes :

1. Because the finding and judgment were contrary to law.

2. That the same were not sustained by sufficient evidence.

3. Irregularity in the proceedings of the court, by which the defendants were adjudged to have no preference in the payment of their judgments over the plaintiffs in the case.

The motions were overruled, and exceptions were taken.

The testimony is all set out in a bill of exceptions and shows substantially the following facts :

Margaret McHugh was a sole trader in Lafayette, and purchased merchandise of the plaintiffs to the amount of their bills set out in the various complaints, on the 1st of January, 1868. After the debts were made, she married Patrick McGoldrick, and continued the mercantile business in her own name; in April (prior to the 20th), 1868, being embarrassed, she went to Cincinnati to adjust her liabilities by a compromise with her creditors, but failed to do it. She returned to Lafayette, and on the 20th of April appeared with her husband in open court to complaints in favor of the McFaddens, Sheern, Ford, and Cox; and on trial the court rendered judgments for the amounts justly due them, and

ordered the money to be made out of the property of Margaret and her husband, or either of them. Immediately thereafter, on the same day, Chase & Wilstach, acting as her attorneys as to all matters except the collection of said judgments, wrote to the several creditors the letter copied into the complaint, stating what had been done and proposing a compromise at forty per cent. on secured paper, and urged its acceptance; on the next day executions were issued upon these judgments and placed in the sheriff's hands, and their collection was enjoined by the court as above stated. At the time of allowing the judgments to be taken, said Margaret was indebted to the plaintiffs in this suit about eleven thousand dollars and was in failing circumstances.

The McFadden claim had been in Chase & Wilstach's hands for several months under repeated promises of payment. The judgment of Sheern was for household furniture, that of Ford for rent, and that of Miss Cox for services.

Henry Leaming, receiver, took possession of all Mrs. McGoldrick's assets and converted them into money. The agreement copied in the bill of exceptions shows that the defendants Sheern, Ford, and McFaddens, claimed a priority out of the proceeds of the goods to pay their judgments, and all the defendants insisted that the plaintiffs had no right to proceed by injunction and receiver. The affidavits read on the application for an injunction were also read as evidence, by agreement, and the reports of the receiver were also read in evidence in like manner.

All the rulings of the court against the defendants were objected to, and exceptions taken.

We condense the pleadings, evidence, and rulings of the case into the following brief statement:

Margaret McHugh carried on the retail dry goods business from in 1864 to January 1st, 1868, when she married Patrick McGoldrick, who had no means and never exercised any control over the stock or the business, but the same was managed by Mrs. McGoldrick after her marriage till the property was taken from her by the receiver. The wholesale

house of G. H. & H. McFadden sent their claim for collection to Chase & Wilstach, attorneys, in the summer of 1867, who collected a part and got promises for the residue. In April, 1868, Mrs. McGoldrick owed about eleven thousand dollars to Cincinnati parties for goods, and was unable to pay in full. She went to compromise with them at forty cents and failed to do it, and returned to Lafayette and appeared in court and allowed judgments to be taken in favor of four creditors for goods, rent, and services, justly due, to an amount less than six hundred dollars. The other creditors enjoined her disposal of the goods, and the court put the goods into the hands of a receiver who sold them, and the proceeds were divided *pro rata*, giving each less than twenty per cent. and leaving the balance of the debts unpaid. The defendants who had procured judgments and executions were deprived of their liens upon the goods and compelled to share with the other creditors; exceptions were taken at every step.

Counsel for appellants have discussed the sufficiency of the complaint, but no such question is presented by the record. There was no demurrer to the complaint. The failure to demur does not waive the jurisdiction of the court over the subject of the action or the sufficiency of the facts stated in the complaint; but to raise such a question here, there must be an assignment of error, either that the court below did not possess jurisdiction of the subject-matter of the action, or that the complaint does not state facts sufficient to constitute a cause of action. There is no such assignment of error.

We do not deem it necessary to consider in detail all the errors assigned or questions discussed by counsel, as the examination and decision of three or four questions will be decisive of this case.

The primary and most important question is, whether an insolvent debtor, contemplating an assignment, can confess a judgment in favor of a creditor for a just debt, upon which an execution may issue, and under and by virtue of

which the goods of the debtor may be seized and sold. The precise question was decided by this court in *Lord* v. *Fisher*, 19 Ind. 7, where it was held that the transfer of a part or all of his property, either directly or by way of confession of a judgment and levy of an execution by a debtor in failing circumstances, for the purpose of paying one debt, leaving many others unpaid or unsecured, if done in good faith, unaffected with any secret trust, is valid, although done in contemplation of, and but a few days before the execution of, a general assignment by the debtor.    In that case the court say:

"Naturally, a man has a right to make an honest disposition of his property; that is to say, he may use it to pay an honest debt. It may not be an honest disposition of property to sell it upon a new, and even adequate consideration, if the sale is to keep the property from creditors.    It is an honest disposition of a man's property to use it in paying or securing an honest debt.    It is a dishonest use of it to pretend to convey it to pay or secure a debt, when, in fact, it is conveyed to be held upon a secret trust for the benefit of the grantor.    It is not, in the eyes of the law, necessarily a dishonest use of a man's property to convey all he has to pay or secure one debt, while he leaves many others unpaid, or unsecured. *Chandler* v. *Caldwell*, 17 Ind. 256.  In the case at bar, it is not pretended but that the debt of Doughty and Snyder to Fisher was an honest one; nor is it pretended but that the judgments were confessed according to law, and the executions levied upon the property for the *bona fide* purpose of appropriating it to pay the executions, rather than to be held for the use of Doughty and Snyder.   Nor is it denied that the law holds it commendable in a creditor to be diligent in his collections; and it seems that such diligence is all that Fisher has been guilty of.   Why, then, is he to be deprived of the benefit of the security which his diligence on the one hand, and the free will of Doughty and Snyder on the other, have given him?"   The ruling in the above case was adhered to and followed in the following cases: *Blakemore* v. *Taber's*

*Ex'r*, 22 Ind. 466; *Wilcoxon* v. *Annesley*, 23 Ind. 285; *Keen* v. *Preston*, 24 Ind. 395.

It is conceded in the present case that the debts in favor of the McFaddens, Ford, and Sheern, were honest and due at the time the judgments were rendered. Nor is it pretended that the judgments were not rendered according to law, or that the executions were taken out and levied upon the property of Mrs. McGoldrick with the honest purpose of making the judgments. There does not seem to have been any secret trust or private understanding between the parties. The debtor was in failing circumstances, and desired to prefer some of her creditors to the exclusion of others. To accomplish this purpose, the judgments were taken and executions issued and placed in the hands of the sheriff. There was nothing illegal or dishonest in this. The judgments having been rendered upon honest debts and according to law, and executions having been issued and placed in the hands of the sheriff, the judgment creditors acquired a lien on the property which was prior and paramount to the claims of other creditors who had no judgments. In the present case the judgments were not confessed. Regular complaints were filed, to which the defendants entered their appearance. Proof was heard by the court, and judgment was rendered in each case upon such proof, and not by confession. The judgment creditors, having acquired prior liens, were entitled to have their judgments paid in full. It is, therefore, manifest that the court erred in its final decree in providing that such judgment creditors should share *pro rata* in the distribution of the proceeds of the sale of the property of the judgment debtors.

We proceed to inquire whether the court erred in granting an injunction. The injunction was two-fold in its character. First. It enjoined the McFaddens, Ford, and Sheern from collecting their judgments by the levy upon and sale of the property of the judgment defendants. Second, It enjoined Mrs. McGoldrick and her husband from selling or disposing of their property.

There is no principle upon which the injunction against McFaddens, Ford, and Sheern can be sustained. They had obtained valid judgments, upon which executions had issued and been placed in the hands of the sheriff. These proceedings gave them a lien upon all the property of the judgment defendants, which was subject to such executions, and this lien was prior and paramount to the claims of the plaintiffs in this action. The court possessed no power to enjoin them from having their executions levied. It is also insisted by counsel for appellants that a creditor who has not reduced his claim to a judgment has no right to enjoin judgment creditors, although the judgments may have been fraudulent. We do not deem it necessary to decide anything on this point, as the injunction was improperly granted for the reason already stated, but refer to some authorities on the point. *Reubens* v. *Joel*, 13 N. Y. 488; *Roraback* v. *Stebbins*, 40 N. Y. 62.

It is provided by section 137 of the code, 2 G. & H. 132, that, "when, during the litigation, it appears that the defendant is doing, or threatens, or is about to do, or is procuring or suffering some act to be done, in violation of the plaintiff's rights, respecting the subject of the action, and tending to render the judgment ineffectual," or "where it appears in the complaint, at the commencement of the action, or during the pendency thereof, by affidavit that the defendant threatens, or is about to remove, or dispose of his property, with intent to defraud his creditors, a temporary injunction may be granted to restrain the removal or disposition of his property."

The allegations of the complaint do not bring this case within the cases provided for in the above section of the code, and the allegations made are not supported by the affidavits in the record. The injunction was asked upon the grounds that the debtors had been guilty of a fraud in permitting judgments to be taken against them, and that Mrs. McGoldrick had acted in bad faith in not keeping her appointment to meet her creditors in Cincinnati. As

we have seen, the judgments were not fraudulent, but were valid. But injunctions are granted to restrain the commission of acts threatened or anticipated, injurious to the plaintiff, pending the litigation, and not where the act complained of has been consummated either before or after the action is commenced, and before judgment. *Reubens* v. *Joel, supra.* The failure of Mrs. McGoldrick, under the circumstances shown in the affidavits, to meet her creditors can not be tortured into a cause of injunction. There is an apprehension expressed in a very general and indefinite way in the complaint, that, unless restrained, Mrs. McGoldrick and her husband will dispose of their property, but this apprehension is not supported by a statement of facts showing that acts had been done or were threatened to be done, looking toward a fraudulent disposition of their property. The apprehension was based upon the rendition of the judgments and the failure of Mrs. McGoldrick to meet her creditors.

The defendants were in the open and visible possession of the stock of goods. There was no evidence showing, or even tending to show, that they had fraudulently disposed of any of their property, or that they threatened so to do. The courts were open to the plaintiffs to obtain judgments on their claims, and if, during such litigation, the defendants, either disposed of or threatened to dispose of their property to defraud their creditors, the plaintiffs might have resorted to the proceeding by attachment. There was no cause shown for an injunction.

Did the court err in appointing a receiver?

Having held that the judgments in favor of McFaddens, Ford, and Sheern were legal; that the executions issued thereon and in the hands of the sheriff created a lien upon the property of the judgment defendants; that the injunction was improperly granted, because it was not shown that there was danger of the defendants fraudulently disposing of their property; it seems to result logically and irresistibly that there was no ground for appointing a receiver. Mrs. McGoldrick had done nothing, nor did it appear that she

threatened or was about to do anything, which would forfeit her right to the possession and disposition of her own property. It is provided by the third subdivision of sec. 199 of the code, 2 G. & H. 152, that a receiver may be appointed in a case like this, where it is shown that the property, fund, or rents and profits in controversy are in danger of being lost, removed, or materially injured. There was no such showing in this case.

It is very obvious to us that McFaddens, Ford, and Sheern, having acquired a prior and paramount lien upon the property of the judgment debtors, were entitled to have their judgments paid in full, and that the court erred in its final judgment in requiring them to share *pro rata* with the other creditors, in the distribution of the money paid into court.

The judgments rendered in favor of Slevins & Sons and the other plaintiffs, and against Mrs. McGoldrick and her husband, seem to have been based upon just claims, and are affirmed.

The judgment is reversed, with costs; and the cause is remanded, for further proceedings in accordance with this opinion.