## Cox *v.* The Louisville, New Albany, and Chicago Railroad Company.

STREET.—*Dedication of by Town Plat.—Fee Simple.*—By the making and recording of a town plat, under the statutes of this State on that subject, the designation of streets, lanes, and alleys on the plat gives to the public only an easement therein for such use as the public have a right to make of them; but the fee simple remains in the proprietor.

SAME.—*Effect of Conveyance of Land Abutting on Street.*—A conveyance of land on a highway carries with it the fee to the center of the road, as part and parcel of the grant, unless such inference be expressly excluded; and this rule is applicable when the land conveyed is a lot or part of a lot in a town or city and designated on the plat by its number, or ascertained by its appropriate description, and abutting on a street, lane, or alley. (PETTIT, J., dissented.)

SAME.—*Location of Railroad on Street.*—The construction of a railroad track

along a street, on which locomotives and trains of cars are used, is a new use or appropriation of the soil and entitles the owner of the fee to an action for damages and to all other remedies provided by law for the protection of rights in real property.

CONSTITUTIONAL LAW.—*Railroad.*—*Appropriation of Lands for Right of Way.* Under the constitution of 1851, the owner of land appropriated by a railroad company can not be required to initiate proceedings, under the statute, for the assessment of damages for such appropriation; it is the duty of the railroad company to have the damages assessed, and to tender the same before taking the land. This necessarily follows from the provision of the constitution, that no man's property shall be taken by law without just compensation, nor, except in case of the State, without such compensation being first assessed and tendered. All decisions of this court asserting a contrary doctrine are overruled.

SAME.—*Remedies of Land-Owner.*—If a railroad company enter into possession of the land of an individual for the use of the road, without first having his damages assessed and tendered, the owner may maintain an action to recover possession of the land; and he may enjoin the use of his land by the railroad company until his damages are assessed and tendered.

INJUNCTION.—*When it Lies to Prevent Continuance of Injury.*—Injunctions, being designed to prevent the doing of acts, are not granted after the acts are done; but when there is a continuance of an injury against which, before the act was committed, an injunction might have been granted, and a right to continue the injury is claimed by the aggressor, an injunction may, in a proper case, be granted to restrain such continuance.

LIMITATION.—*Damages.*—The length of time, prior to bringing suit, for which the owner can recover damages against a railroad company for an unauthorized use of his land discussed, but not decided.

From the Tippecanoe Circuit Court.

*J. R. Coffroth* and *T. B. Ward,* for appellant.

*H. W. Chase, J. A. Wilstach, S. A. Huff, B. W. Langdon,* and *J. S. Pettit,* for appellee.

DOWNEY, J.—This was an action commenced by the appellant against the appellee. On demurrer to the complaint, there was judgment for the defendant, the court holding that the complaint was not sufficient, because it did not state facts sufficient to constitute a cause of action. From this judgment the plaintiff appealed to this court, and he has assigned as error the sustaining of the demurrer to his complaint. It is alleged in the complaint that the plaintiff is now, and has been

for thirty years, the owner in fee simple of the following, described real estate, situated in the county of Tippecanoe,. and State of Indiana, to wit: Lots number one hundred and nine and one hundred and ten, in the original plat of the town, now city, of Lafayette; that said property borders upon and abuts the east line of Fifth street, in said city, for a distance of two hundred feet; and said plaintiff is now,. and has been for thirty years, the owner of the fee simple of said Fifth street, from the west line of said property to the center of said street for the said distance of two hundred feet.

Plaintiff further says that said defendant is a railroad company organized under the laws of the State of Indiana; that heretofore, to wit, in the year 1853, the New Albany and Salem Railroad Company, which was a railroad company organized under the laws of the State of Indiana, without authority of law, without right, and without first causing damages to be assessed and tendered the plaintiff, and without his consent, entered upon and laid her track upon that portion of said Fifth street above described, of the fee simple of which the plaintiff was then, and has ever since been, and is now, the owner; and the said New Albany and Salem Railroad Company, and her successor, to wit, the Louisville, New Albany, and Chicago Railroad Company, the defendant, have, ever since such entering upon and appropriation of said Fifth street, continued the use of the same in the operation of their railroad, in propelling cars and engines over and upon the same; and the defendant is now using, and threatens to continue the use of the same for that purpose. Plaintiff says that said appropriation of said portion of said Fifth street, and the said use of it as aforesaid, have been to his great detriment and to the damage of his said property in a large sum, to wit, in the sum of twenty thousand dollars.

Prayer for judgment for twenty thousand dollars damages, and that the defendant may be perpetually enjoined from the use of said portion of Fifth street by her track and the run-

ning of her engines and cars over the same, and for all other proper relief.

On account of the importance of the questions involved, and because there are other cases pending in this court in which the same points, or some of them, arise, this case has been briefed with more than the usual care and ability. Besides the briefs which are filed in this case, we have had the benefit of the arguments of counsel in the other cases to which we have referred.

The first question is as to the right or interest which the abutting owner has in the street in front of his lot. Counsel for the appellant contend that the fee simple of the street to its center, subject to the public easement, is in the abutting owner, while counsel for the appellee insist that the fee simple is in the public, while the abutting owner has but an easement in the street.

It is submitted by counsel for the appellee that the question is governed and settled by the statute relating to the laying out of towns, and making and recording plats thereof. The statutes on this subject in the various revisions, including that of 1818, have been substantially the same. Revised Laws of 1824, p. 412; Revised Laws of 1831, p. 530; Revised Statutes of 1838, p. 595; Revised Statutes of 1843, p. 384; and 1 G. & H. 632. The sections of the statute of 1818, which is the one that was probably in force at the making of the plat, which are supposed to bear on the question, are as follows:

" Sec. 1. Be it enacted, etc., that any person or persons, his, her, or their legal representatives, who may hereafter lay off any town within this State, shall, previous to the sale of any lots in such town, cause to be recorded in the recorder's office of the county wherein the same may lie or be laid off, a correct copy of the plat of said town, with the public grounds (if any there be), streets, lanes, and alleys, with their respective widths properly marked, and the lots regularly numbered, in numerical order, and the size of the lots marked, by reference to the plat of said town.

" Sec. 2. Every donation or grant to the public, or any indi-

vidual or individuals, religious society or societies, or to any corporation or bodies politic, marked or noted as such on the plat of the town wherein such donation or grant may have been made, shall be considered to all intents and purposes as a general warranty to the said donee or donees, grantee or grantees, for his, her, or their use, for the purposes intended by the donor or donors, grantor or grantors, aforesaid."

Conceding that the proprietor of the town complied with this law in every respect, that he made the plat and caused it to be recorded, indicating the location of the street and its width, and writing upon it its name or number, what was the effect or operation upon his ownership of the fee simple estate which he had in the land over which the street runs? It is not very clear that the second section of the statute has any reference to streets, lanes, and alleys, but we will concede that it has, and that streets, lanes, and alleys are among the "donations or grants" mentioned in the section. What is a street? and what is to be understood by the donation or grant of a street? A street is a highway. *Conner v. The President, etc.,* 1 Blackf. 43, 88; *West v. Blake,* 4 Blackf. 234; *The State v. Mathis,* 21 Ind. 277; *The Common Council, etc., v. Croas,* 7 Ind. 9. In the last named case, GOOKINS, J., says: "No doubt a street or alley in a town is a highway. * * * Every street is a highway, but every highway is not a street." Bouvier, in his Law Dictionary, defines a street as "a public thoroughfare or highway in a city or village," and cites 4 S. & R. 106; 11 Barb. 390.

The grant of a street or highway over one's land is but the grant of an incorporeal hereditament. By its very terms, it signifies that the party to whom the grant is made acquires an easement in the land, and nothing more. Bouvier says:

"A street, besides its use as a highway for travel, may be used for the accommodation of drains, sewers, aqueducts, water and gas-pipes, lines of telegraph, and for other purposes conducive to the general police, sanitary, and business interests of a city." Dict. title Street.

In some of the states, as in Iowa, for instance, the statute

with reference to town plats, expressly provides that the making and recording of the plat shall pass the fee simple of the land over which the streets run. *Milburn* v. *The City of Cedar Rapids,* 12 Iowa, 246

Had our statute such a provision in it, its construction would necessarily be different. The part of sec. 2 of our act, declaring that the making or noting of a donation or grant shall be considered " a general warranty," does not enlarge the grant. It simply means that the plat shall be construed as a general warranty of what is thereby granted. Where a donation or grant is made, by an appropriate mark or note on the plat, of a lot or square, there, as the fee of the property is intended, there is no difficulty in holding that such an estate passes. *The City of Logansport* v. *Dunn,* 8 Ind. 378. Nothing else would satisfy the evident intention of the parties. There is nothing to limit the donation or grant, as there is where only a street, lane, or alley is granted, which signifies merely the grant of a use or easement. It is probable that if a proprietor of a town should state on the plat that the ground over which the streets pass should be granted to or vest in the public in fee simple, such an interest, in that case, would pass. But a mere designation of the streets as such, or as public highways, can not, by any proper construction, be held to pass the fee simple. By the second section of the act set out above, the plat operates as a general warranty, " for the purposes intended by the donor or donors, grantor or grantors aforesaid." It certainly can not be held that a donation or grant of a street or an alley, which means merely a right of passage, etc., can be construed as a conveyance of the fee simple. On this part of the case the ruling in *Conner* v. *The President, etc., of New Albany,* 1 Blackf. 43, which we have already cited, is exactly in point. The question was as to the interest which passed in the streets by the making and recording of the plat, under a statute similar to that of 1818. HOLMAN, J., said:

" It appears, therefore, very clearly, that the complainants have shown no property to which they have any title, on the

river margin of the town, except what they own in Water street. It becomes, then, an all important inquiry to know what property they own in that street. A public street in a town is a public highway. This position is too universally admitted to require authority to support it. A public highway is, then, granted by the original proprietors to the town of New Albany, one hundred feet wide, running the whole length of upper and lower Water streets, by its being designated as a street of that width in the plan of said town by the proprietors, and recorded as such. And this grant of a public highway is warranted to the grantee, or grantees, by the operation of the before mentioned act of Assembly. But that act will not authorize us to extend the grant beyond the intention of the grantors. The universal acceptation of the word *street* thus used, as being synonymous with a highway, or common thoroughfare, will govern this grant, and fix the purpose for which it was intended.''

This case has never been doubted, qualified, or overruled, but, on the contrary, has been cited and approved in other cases. *Haynes* v. *Thomas*, 7 Ind. 38; *Williams* v. *Wiley*, 16 Ind. 362; *The State* v. *Mathis*, *supra*. The rule is stated with exceeding force and perspicuity, and meets with our entire concurrence and approval.

The case of *Smith* v. *The City Council of Rome*, 19 Ga. 89, is upon this point, and, by reference to English cases, shows that the same rule prevails in England. See, also, *Perley* v. *Chandler*, 6 Mass. 453.

The unsupported remark of the judge in *The New Albany, etc., R. R. Co.* v. *O'Daily*, 13 Ind. 353, to the effect that the fee simple of the street would seem to be in the public, is not an authority on the point.

We conclude, then, that by the making and recording of a town plat, under our statute on that subject, the designation of streets, lanes, and alleys on the plat gives to the public only an easement therein for such uses as the public has a right to make of them, and that the fee simple remains in the proprie-

tor. Sec. 8, p. 633, 1 G. & H., is not inconsistent with this view of the question.

The next question is, what interest or estate does the abutting owner acquire in the street by the purchase, from the proprietor, of a lot fronting on the street? Having arrived at the conclusion that the fee simple in the streets, etc., continues in the proprietor, notwithstanding the making and recording of the plat, does it still remain in him after he has conveyed his title in the adjoining lots, or does it pass to those to whom the abutting lots are conveyed by him? In those states where the legislature has enacted, or the courts decided, that the making and recording of the plat passes the fee to the public, this question can not arise, since, if the fee passes by the act of dedication to the public, the proprietor can not afterward convey it to the purchasers of lots. This question is left in some uncertainty by the decisions of this court. In *The Common Council, etc.*, v. *Croas*, 7 Ind. 9, it was held that the laying out of an addition to a town, recording the plat, and selling lots with reference to the adjoining streets and alleys, gave to the proprietors of those lots a private right distinct from the claim of the public, which even the legislature could not take away unless to appropriate to a public use, and several authorities are cited in support of the rule.

The learned judge who delivered the opinion does not attempt, however, to define the nature of the " private right distinct from the claim of the public," which the purchasers of the lots acquire. It is something, however, distinct from the claim of the public to use the streets and alleys as public highways. The purchaser of a lot could acquire no private right in the mere easement which belonged to the general public, and we infer, therefore, that the reference must have been to the fee simple.

In *Haynes* v. *Thomas*, 7 Ind. 38, the same learned judge says: " The right to use a street in a town adjoining a lot abutting upon it, is as much property as the lot itself, and the legislature has as little power to take away one as the other. Whether the act of dedication transfers the fee from the donor

to the public, is not a material inquiry." The nature of the private right of the abutting owner is still left in uncertainty by this decision. It is, however, said to be " as much property as the lot itself."

In *Tate* v. *The Ohio, etc., R. R. Co.*, 7 Ind. 479, the court approves of the last named case, and in speaking of the right of the lot-owner in the street, the learned judge who delivered the opinion speaks of it as " his easement in the street." Now, as the street itself is but an easement, when an easement in the street is mentioned no additional light is thrown upon the question, but rather obscurity.

In *Kimball* v. *The City of Kenosha*, 4 Wis. 321, the existence of any private right of way in the street in favor of an abutting owner, distinct from and independent of the public right of way, is expressly denied.

In *Protzman* v. *The Indianapolis, etc., R. R. Co.*, 9 Ind. 467, it was said : " In *Haynes* v. *Thomas*, 7 Ind. 38, it is decided that the right of the owner of a town lot abutting upon a street, to use the street, is as much property as the lot itself; that it is appurtenant to the lot, and is protected by the constitution. It can not be taken away without compensation. The lot, and street adjoining, then, as to the owner of the former, would seem to constitute but one piece of property, and an injury to the latter would seem to be an injury to the former — to the whole property." This case puts the estate of the lot-owner in the street on somewhat more satisfactory ground. The lot and the street " would seem to constitute but one piece of property."

In *The New Albany, etc., R. R. Co.* v. *O'Daily, supra,* the learned judge who wrote the opinion in the last named case uses this language : " The fee simple in the streets of towns and cities in Indiana, would seem, during the existence of the corporation, to be in the public. At all events, this court has decided that taking a street is not ' taking an interest in land' of the adjoining proprietor." In this decision, if this mere remark can be regarded as such, the court seems to have lost sight of that interest in the street held by the lot-owner,

which was " distinct from the claim of the public, which even the legislature could not take away," etc., which was " as much property as the lot itself," and which, with the lot, " constituted but one piece of property." We can not regard the case, or the remark under consideration, as an authority upon this point, which we ought to follow.

In *Vaughn* v. *Stuzaker*, 16 Ind. 338, the doctrine is stated to be, that the owner of the land is the owner of the fee simple, notwithstanding he has granted a right of way or street over the soil owned by him, and that his deed to another passes such interest in the street.

In Massachusetts, the rule is, that the title of the owner of land abutting on a highway must be presumed to extend to the center of the highway ; that where a deed is made for such real estate, with no restriction or controlling words, the title to the middle of the highway passes; and this was held with reference to the ownership of the soil over which a street ran. *City of Boston* v. *Richardson,* 13 Allen, 146, and cases cited.

In New York, the same rule prevails. In *Adams* v. *Rivers,* 11 Barb. 390, where the plaintiff owned lots on the street, it was held that he owned to the center of the street. The court, referring to some of the authorities in that state, treated the rule as well settled, that, subject to the right of mere passage, " the owner of the soil is still absolute master."

Such is the rule in New Hampshire, also. *Rowe* v. *Addison,* 34 N. H. 306 ; *The Proprietors of Claremont* v. *Carlton,* 2 N. H. 360.

In Vermont, the question is held to be one of intent, but the presumption is, that the parties intended to include the highway to its center, and the burden of proof is upon the party who assumes it, to show the contrary intention. *Buck* v. *Squiers,* 22 Vt. 484.

In Wisconsin, it is the settled doctrine that the proprietors of lots bounded by a public street, within a recorded town plat or village, take to the center of the street, and own the soil subject to the public easement. *Kimball* v. *The City of Kenosha,* 4 Wis. 321 ; *Goodall* v. *The City of Milwaukee,* 5

Wis. 32; *City of Milwaukee* v. *Milwaukee, etc., R. R. Co.,* 7 Wis. 85; *Mariner* v. *Schulte,* 13 Wis. 692; *Ford* v. *The Chicago, etc., R. R. Co.,* 14 Wis. 609; *Weisbrod* v. *The Chicago, etc., R. W. Co.,* 18 Wis. 35; *Hegar* v. *The Chicago, etc., R. W. Co.,* 26 Wis. 624.

*The City of Dubuque* v. *Maloney,* 9 Iowa, 450, is a very instructive and satisfactory authority on this point. The city of Dubuque was laid out by authority of an act of Congress. It is decided that if lots are sold by their number on a plat, and if the lots are bounded by a street or highway, that circumstance raises a strong presumption of an intent to pass the soil to the center of the street or highway, and it will pass accordingly, unless the highway be clearly excluded. We refer particularly to the authorities cited in the able opinion in this case. *Banks* v. *Ogden,* 2 Wal. 57, may be cited to the same point; also, Smith's Leading Cases, vol. 2, 142, *et seq.;* 3 Washb. Real Property, 3d ed., p. 361, and note; *White* v. *Godfrey,* 97 Mass. 472.

Without citing or examining other authorities, we think it may be laid down that the established inference of law is, that a conveyance of land bounded on a highway carries with it the fee to the center of the road, as part and parcel of the grant, unless such inference shall be expressly excluded, and that this rule is applicable where the land conveyed is a lot or part of a lot in a town or city, designated on the plat by its number, or ascertained by its appropriate description, and abutting on a public street, lane, or alley.

We are next to consider the question, whether the construction of a railroad on and along a street, on which locomotives and trains of cars are used, is a new use or appropriation of the soil so as to entitle the owner to damages therefor.

The following cases in this court hold that an abutting owner has a right of action for an unlawful appropriation of the street, in front of his property, to his injury: *Haynes* v. *Thomas, supra; Tate* v. *The Ohio, etc., R. R. Co., supra; Hutton* v. *The Indiana Central R. W. Co.,* 7 Ind 522; *Protzman* v. *The Indianapolis, etc., R. R. Co., supra; The Indiana Central*

*R. W. Co.* v. *Boden*, 10 Ind. 96 ; *City of Delphi* v. *Evans*, 36 Ind. 90. There are probably other cases. The fact that a right of action has thus been recognized in the abutting owner, for an improper use or appropriation of the street, seems to be a recognition of the existence of a right in the soil, which will enable him to prevent the public easement from being perverted from its original uses and purposes—to restrict the public from encroaching upon private rights under the pretence of a use of the easement. Bouvier, in his law dictionary, title Street, says: "A street, besides its use as a highway for travel, may be used for the accommodation of drains, sewers, aqueducts, water and gas-pipes, lines of telegraph, and for other purposes conducive to the general police, sanitary and business interests of a city. A street may be used by individuals for the lading and unlading of carriages, for the temporary deposit of movables or of materials and scaffoldings for building or repairing, provided such use shall not unreasonably abridge or incommode its primary use for travel." Authorities are cited in support of these propositions.

Judge Dillon, Municipal Corp., vol. 2, p. 657, says: " If the fee in the streets or highways is in the public, or in the municipality in trust for public use, and is not in the abutter, the doctrine seems to be settled that the legislature may authorize them to be used by a railroad company in the construction of its road, without compensation to adjoining owners, or to the municipality, and without the consent, and even against the wishes, of either. But where the public have only an easement in the street or highway, it has been generally, but not always, held that against the proprietor of the soil the use of the street or highway, for the purpose of a steam railroad, is an additional burden, which, under the constitution of the different states, can not be imposed by the legislature without compensation to such proprietor for the new servitude." In case the proprietor has dedicated the highway, it was for the ordinary uses to which streets are applied ; and if it was obtained by the payment of damages, his damages may be supposed to have been assessed with no other view. It has been

.sometimes said that a railway is only an improved highway, but this is a position which can not be sustained. Railway companies are not public corporations, except in a limited sense. "The right of way," as was observed by Scott, J., in *The Indianapolis, etc., R. W. Co.* v. *Hartley,* 2 American Railway Rep. 59, "the road bed, and the carriages propelled thereon, are owned by private individuals and not by the public. Fares are charged for travel thereon for the exclusive benefit of the parties owning the road. They are constructed and equipped in the interest of private speculation, but at the same time, they are intended to subserve the public good. The travel on them bears no analogy to our notions of travel on an ordinary street or highway, where every one travels at pleasure in his own conveyance, without paying tolls or fares. The uses are totally different and even inconsistent. The one is exclusive, in favor of private interest, and the other is open and free to all. The doctrine most in consonance with our sense of justice is, where the fee of the street remains in the abutting land-owner, the corporation may grant the right to a railway company to lay its track along or across any street, but the company avails of its privilege at its peril. If in laying its track it causes a private injury to him who owns the fee in the adjoining premises, it must make good the damage sustained."

It is scarcely necessary to say that the construction and operation of a steam railway along a public street, whether it be a business street or one devoted to private residences, must generally be a cause of great injury and damage to the owners of abutting lots.

In *Williams* v. *The New York Cen. R. R. Co,* 16 N. Y. 97, it was decided that the dedication of land to the use of the public as a highway does not preclude the owner of the fee, subject to the public easement, from maintaining an action against a railroad company, which, without his consent or an appraisal of his damages, enters upon and occupies such highway with the track of its road.

Such an appropriation of the highway by the railroad com-

Cox *v.* The Louisville, etc., R. R. Co.

pany is the imposition of an additional burden upon, and taking the property of, the owner of the fee, within the meaning of the constitutional provision which forbids such taking without compensation. The company can, therefore, derive no title under acts of the legislature, and the license or consent, to a use inconsistent with the public easement, by municipal or other authorities, who represent the public as to such right, without the consent of the owner of the fee or the appraisal and payment of his damages in the mode provided by law. The following authorities are to the same effect : *The Trustees, etc.,* v. *The Auburn, etc., R. R. Co.,* 3 Hill N. Y. 567 ; *Wager* v. *Troy, etc., R. R. Co.,* 25 N. Y. 526, and cases cited ; *Craig* v. *The Rochester, etc., R. R. Co.,* 39 Barb. 494 ; *Imlay* v. *The Union Branch R. R. Co.,* 26 Conn. 249 ; *The Cincinnati, etc., Street R. W. Co.* v. *Cumminsville,* 14 Ohio St. 523 ; *Indianapolis, etc., R. W. Co.* v. *Hartley, supra ; Ford* v. *The Chicago, etc., R. R. Co.,* 14 Wis. 609 ; *Weisbrod* v. *The Chicago, etc., R. W. Co., supra ; Hegar* v. *The Chicago, etc., R. W. Co. supra ;* Cooley Const. Lim. 541, *et seq.;* Dillon Corp., vol. 2, p. 658, and cases cited in note 1 ; 3 Kent Com. 432, and cases cited in note 1 ; 1 Redfield Railways, 314, *et seq.*

So far as the highway, street, or easement is concerned, as the municipality has complete control thereof, it may, we presume, make or authorize any use of the street which will not essentially change and divert it from its intended use as a public highway.

The municipality is the conservator of the public easement, and has no power to destroy or unnecessarily to limit or obstruct its use by those for whom it was designed or intended.

But this power of the city over the right which is vested in, and intended for the use of, the public cannot upon any fair construction, or with any reference to the proper conservation of the rights of individuals, extend to or affect the rights of the owner of the fee in the soil over which the highway or street passes. This right of the individual, according to the case of *Protzman* v. *The Indianapolis, etc., R. R. Co., supra,* "is as much

property as the lot itself." As was said in *The Common Council,, etc.,* v. *Croas, supra,* it is a " right distinct from the claim of the public, which even the legislature could not take away, unless to appropriate to a public use." In which case, of course, compensation must be made.

Judge REDFIELD, in speaking of the gradual shifting of ground in some of the courts on this subject, and with reference to the question whether or not the same rule applies to street railroads and to steam railroads, says : " The explanation of the singular vacillation of the courts upon the subject of railways being located on the highways, and whether the owner of the fee was thereby entitled to additional compensation, seems to arise in the following manner. At the first it was so common to designate steam railways as only an improved highway, that the courts, almost universally in this country, held the owner of the fee entitled to no additional compensation by reason of such railways being laid upon the highway, either across or along their route. But this view, upon more careful consideration, being found untenable, the retrocession of the courts from their former false assumption naturally gave them an unnatural impulse in the opposite direction, by which the conclusion was arrived at, that all railways must equally be an additional burden upon the fee. Whether the proper distinction between street railways and those occupying a distinct route and transacting mainly a distinct business will ever be clearly defined, is perhaps questionable." 1 Redfield Railways, 313.

We conclude, on this point, that the appropriation of the soil over which a street passes, the abutting proprietor owning the fee to the center of the street, is a new or additional appropriation, which entitles the abutting owner to such damages as he may sustain thereby.

The next consideration is as to the remedy of the abutting owner, where the soil of the highway or street passing over his land is appropriated to, and occupied for, a use not falling within the easement granted to the public. We are justified by the authorities, we think, in the statement, that he has all

Cox v. The Louisville, etc., R. R. Co.

the remedies of any other owner of the soil. In so deciding, we are aware that the ruling is contrary to several decisions heretofore made by this court. The propositions already decided necessarily lead us to this conclusion, and we can see no good reason why we should not adopt it. It seems to us that it is necessary to the proper application and harmonious operation of the principles already enunciated; for if the abutting proprietor is the owner of the fee, subject only to the easement in the public, and if the occupancy of the soil by the railroad is an appropriation not authorized by the grant of the easement, it must follow that the owner should have his remedy to the extent of the injury, as fully and completely as any other owner of the soil. Formerly, the owner of the fee, subject to such an easement, could maintain ejectment against any person who appropriated the land or occupied it permanently in any way which was not incidental to the right of passage over it, and it will follow that an action, under the code, for the possession of real property, the substitute for that action, will now lie. *Goodtitle* v. *Alker*, 1 Burr. 133; Tyler Eject. 63; *Codman* v. *Evans*, 5 Allen, 308; *Gardiner* v. *Tisdale*, 2 Wis. 153.

Kent says: "Being owners of the soil they have all right to all ordinary remedies for the freehold. They may maintain an action of ejectment for encroachments upon the road, or an assize, if disseized of it, or trespass against any person who digs up the soil of it, or cuts down any trees growing on the side of the road, and left there for shade or ornament." 3 Kent Com. 432. That trespass *quare clausum fregit* lies, see *Peck* v. *Smith*, 1 Conn. 103.

The decisions of this court heretofore made, which hold that the abutting owner has no such interest in the soil of the street as may be condemned and appropriated, under the exercise of the right of eminent domain, should, as a necessary consequence, be regarded as overruled by this decision. Such decisions were founded in an incorrect notion of the estate in the soil which was held by the abutting owner.

Under the present constitution, whatever may have been the proper rule under the former, " no man's property shall be taken by law without just compensation; nor, except in case of the State, without such compensation first assessed and tendered." Const., art. 1, sec. 21.

The owner of the property sought to be taken cannot be compelled to resort to any proceeding to secure the compensation to which he is entitled, except, perhaps, when the property is taken by the State for its own use, and hence it cannot be held that where the statute gives him a remedy for the value of his property, the company can compel him to resort to that remedy. He has a right to avail himself of the constitutional protection, and require the party or corporation seeking to appropriate his property to have the damages assessed and paid or tendered to him; and we think the rule is as applicable to cases like the present as to any other. *The Indianapolis, etc., R. W. Co.* v. *Brower*, 12 Ind. 374.

The owner of the land may proceed to have his compensation assessed, when the company has taken or signified its intention to do so, where the statute authorizes him to do so; but he cannot be compelled to initiate the proceeding. *Marion, etc., R. R. Co.* v. *Ward*, 9 Ind. 123.

As the company cannot take the land until the compensation has been paid or tendered, it is necessarily implied that the company must have the assessment made, for otherwise it cannot be known what amount is to be paid or tendered. Hence, it is held, that if a railroad corporation enters into possession of land of an individual for the use of the road, without his consent, and without first having had the damages assessed and tendered, he may maintain an action to recover the possession of the land. *Graham* v. *The Columbus, etc., R. W. Co.*, 27 Ind. 260; *Graham* v. *The Connersville, etc., R. R. Co.*, 36 Ind. 463.

And hence it seems, also, that an injunction may be granted to restrain the company from taking possession of and permanently appropriating the land until the compensation has been assessed and tendered. *The Lafayette Plankroad Co.* v. *The*

*New Albany, etc., R. R. Co.*, 13 Ind. 90 ; *Sidener* v. *The Norristown, etc., Turnpike Co.*, 23 Ind. 623 ; *The Norristown, etc., Turnpike Co.* v. *Burket*, 26 Ind. 53 ; *Graham* v. *The Columbus, etc., R. W. Co.*, *supra.*

In the last named case, it was well said, by FRAZER, J., in announcing the opinion of the court : " The case is not one where a new right is created, and a particular remedy provided to secure it. The right to have damages assessed was not intended as an exclusive remedy for the taking of property without previous compensation. · It is very inadequate to the purpose in many cases. It is well adapted to cases where the owner chooses to waive prior compensation,. and is content to believe that the damages assessed will be paid when ascertained, or is content with such final process as the law ·gives for the collection of a judgment for money. It is his right to make this waiver. But the constitution cannot be satisfied with such action of the courts as will allow his property, against his will, to be first taken, and himself turned over to such vexatious litigation to obtain compensation as he may meet afterward. There must be superadded, in order to make the remedy at all efficient, an injunction to stay the taking until ·the damages shall be paid. But this is not provided for by statute. It is an appeal to the extraordinary power of the ·court exercising equity jurisdiction."

While this is held to be the law, it should be stated, that where the act sought to be enjoined is a mere trespass which may be compensated in damages by an action brought for that purpose, an injunction will not be granted. *Lewis* v. *Rough*, 26 Ind. 393 ; *The Indianapolis, etc., Co.* v. *The City of Indianapolis*, 29 Ind. 245.

The case of *The New Albany, etc., R. R. Co.* v. *O'Daily*, *supra*, like several other cases decided about the same time, proceeded on the ground that the abutting owner had no estate in the soil under the street; but according to the later decisions, and the views expressed in this opinion, we cannot think it was correctly decided, so far as it held that the injunction was improperly granted by the circuit court.

Injunctions, being designed to prevent the doing of an act, are not granted after the act has been done. Past injuries are not, in themselves, ground for an injunction. *McGoldrick* v. *Slevin*, 43 Ind. 522. But when there is a continuance of an injury, against which, before the act was committed, an injunction might have been granted, and a right to continue it is claimed by the aggressor, an injunction may, in a proper case, be granted to restrain such continuance. *Society, etc.*, v. *Morris Canal Co.*, Saxton, 157 ; Hilliard Injunc. 22, sec. 38.

We are not prepared to hold that, under the circumstances disclosed in the complaint in this case, there was any error in refusing the injunctive relief which is asked in the complaint, had that been the only relief sought.

There is no allegation that the company claims the right to continue to occupy and use the plaintiff's soil. We think, however, that the complaint states a good cause of action for the damage which the plaintiff has sustained. For what length of time the plaintiff can go back in making such claim for damages, we need not decide—perhaps not beyond the statutory period of limitation for actions to recover for injuries to property. 2 G. & H. 156, sec. 210, third division.

We do not think the statute of limitations a bar to all the plaintiff's cause of action. Angell Lim., secs. 300, 307. In the first section cited, it is said : " Every continuance of that which was originally a nuisance the law considers a new nuisance, and, therefore, though the party complaining cannot in an action on the case, recover upon the original cause of action, after the expiration of six years, he may for its continuance any time before the right of entry is barred as above mentioned, and recover not only nominal damages, but such actual damage as has accrued any time within six years."

The judgment is reversed, with costs, and the cause remanded, with instructions to overrule the demurrer to the complaint.

PETTIT, J.—I do not concur in this opinion. I do not think a man takes a fee simple in land not covered by and

included in his deed on its face.   If an owner of a lot in a city may have an action for incumbering a street adjoining, it is not because he is the owner of the fee simple to the center of the street.