## REUBENS *against* JOEL and others.

A simple contract creditor cannot maintain an action against the debtor and his fraudulent assignee, to restrain the latter from disposing of the assigned property, and to have the assignment declared void, and his debt paid.

To sustain such an action, the plaintiff must be a judgment-creditor of the fraudulent assignor.[1]

Where, during the pendency of an action to recover judgment against the debtor, he threatens or is about to remove or dispose of his property with intent to defraud his creditors, the court is authorized by § 219 of the Code to restrain him from so doing.

But where the fraudulent transfer has been made, the court is not authorized, in an action by the simple-contract creditor against the debtor and his fraudulent vendee, to restrain the latter from disposing of the property.

The distinction between actions at law and suits in equity, under the Code of Procedure, discussed and pointed out by SELDEN, J.

Neustadt *v.* Joel, 2 Duer 530, affirmed.

ACTION commenced in the superior court of the city of New York, in 1853, against Alfred, Louis and Flora Joel, and Henry H. Leeds. The complaint states that the defendants, Alfred and Louis, were copartners, in New York, and as such executed to the plaintiff two promissory notes, which are set out, for merchandise purchased by them of him. The notes were for over $200 each, and were, by their terms, due; and the complaint averred that the full amount thereof was owing by the makers to the plaintiff. The complaint further states, that the defendants, Alfred and Louis, who had been doing business as merchants, a short

---

[1] See Andrews *v.* Durant, 18 N. Y. 496. Rinchey *v.* Stryker, 28 Ibid. 45.

time previous to the commencement of the action made an assignment of their goods and stock in trade to the defendant, Flora, who was their sister, and a young woman destitute of any property of her own ; that the assignment was ostensibly to secure a pretended indebtedness of some $6000 from the assignors to a Mrs. Levy, who resided in England. The complaint charges that the assignment was made with the fraudulent intent and for the fraudulent purpose of cheating and defrauding the plaintiff and other creditors of the assignors who existed and had debts against them to a large amount ; that the same was colorable, and that the assignors remain the real owners of the property ; and that the defendant, Flora, is fraudulently colluding and conspiring with the assignors in their fraudulent design of cheating their creditors. It further states that the assignors, in connection with the assignee, had, by the defendant, Leeds, as auctioneer, sold a part of the property at auction, and that the latter has received and holds the proceeds of such sale, and that they are about to sell and dispose of the residue; that the plaintiff will sustain irreparable loss and damage if the assignment is allowed to stand and the defendants are permitted to proceed with the sale and dispose of the property, or if Leeds is allowed to pay over the proceeds in his hands. The complaint concludes with a prayer that the defendants, Alfred and Louis, pay the plaintiff the amount of the notes, with costs of the action; that an order in the nature of an injunction be issued by the court, restraining the defendants and each of them from selling or disposing of the assigned property, or paying over or disposing of the proceeds of that which had been sold ; that the pretended assignment to Flora be adjudged fraudulent and void; and that the plaintiff have such other or such other and further relief as might be proper.

The defendant, Flora, demurred to the complaint, stating as grounds of demurrer: 1. That it did not state facts sufficient to constitute a cause of action against her; 2. That

the plaintiff was a creditor at large, without any judgment against Alfred and Louis; 3. That the complaint did not show that the plaintiff had acquired any lien on the assigned property, or had any right to question the validity of the transfer; 4. That the complaint did not state a case authorizing an injunction order against the defendant, Flora, that the complaint showed that the alleged fraud was not threatened but had been consummated; and 5. That there was a misjoinder of parties and causes of action. The cause was heard by Mr. Justice Bosworth, at special term, and judgment rendered in favor of the defendant, Flora, with costs. This judgment was affirmed by the court at a general term. The plaintiff appealed to this court.

*Wm. C. Noyes*, for the appellant.

*S. B. H. Judah*, for the respondent.

T. A. JOHNSON, J. Prior to the Code, it was the settled law that a creditor could not restrain or question the disposition of his debtor's property until he had completed his title at law, by judgment and execution. The reason of the rule was, that to allow the creditor to interfere, before he had established a certain claim upon the property, would lead to an unnecessary and oppressive interruption of the debtor's rights.

The Code (§§ 219, 220) has so far altered the rule as to allow the plaintiff an injunction at the time of commencing his action to obtain judgment, or at any time afterwards before judgment against his debtor, in three classes of cases : First. Where it appears by the complaint that he is entitled to the relief demanded, and such relief or any part thereof consists in restraining the commission or continuance of some act, the commission or continuance of which, during the litigation, would produce injury to him ; Second. Where, during the litigation, the defendant is doing or threatens or is about to do, or procuring or suffering some

Reubens *against* Joel.

act to be done in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual; and Third. Where, during the pendency of the action, the defendant threatens or is about to dispose of his property, with intent to defraud his creditors. This action does not fall within either of these provisions, nor is any warrant afforded by them for making the purchaser or assignee of the debtor, or the factor of the assignee, a party to the action, where it is brought to obtain a judgment against such debtor. In such cases the injunction is given to the plaintiff to restrain the debtor from the commission of acts, threatened or anticipated, injurious to the creditor, pending the litigation merely, and not where the act complained of has been consummated by the debtor either before or after the action is commenced, and before judgment. Actions of this kind, if allowed, would not only interfere oppressively with the debtor in the exercise of his rights, but would render it unsafe for any one to purchase his property or take security upon it, and operate as a mischievous clog and hindrance to the transmission of property.

The judgment below was correct, and should be affirmed.

SELDEN, J. The objections to the complaint in this case are: 1. That the plaintiff, being merely a simple contract and not a judgment creditor, is not entitled to the equitable relief demanded: and 2. That it blends matters which, prior to the recent changes in the practice of our courts, must necessarily have been the subject of different suits; as a judgment for the debt could only have been obtained in a common law court, while the other relief sought requires the exercise of powers possessed by courts of equity alone.

The counsel for the plaintiff, upon the argument, relied mainly upon the last clause of § 219 of the Code, which provides that " where, during the pendency of an action

it shall appear by affidavit that the defendant threatens or is about to remove or dispose of his property, with intent to defraud his creditors, a temporary injunction may be granted to restrain such removal or disposition."

The object of this provision is manifest from the terms used and the connection in which it stands. It was not to give to the creditor at large the same right to invoke the extraordinary power of a court of equity in all cases which a judgment creditor, the justice of whose claim has been established, possesses, but was simply to provide for the single case where, pending a suit in which judgment is about to be recovered, the defendant threatens or in some way manifests an intent to place his property beyond the reach of an execution. If the fraud has been already perpetrated, the creditor, for obvious reasons which will be mentioned hereafter, is left to the remedies previously existing. But when, by interposing temporarily to prevent the consummation of the fraudulent act, the necessity for protracted litigation to establish or subvert the fraud can be saved, it was deemed expedient by the legislature to confer upon the courts this power. The view taken of this provision by Parker, J., in *Perkins* v. *Warren* (6 *How. Pr. R.*, 341), is, I think, in the main, just and sound. The plaintiff, to avail himself of it, must show, not that the defendant has made, but that he threatens or is about to make, a fraudulent transfer of his property; and although this be made to appear, yet if the justice of the claim for which the suit is brought is involved in serious doubt, the court in the exercise of a sound discretion, and in view of the well-settled principles which have always governed the exercise of this extraordinary power, should undoubtedly refuse to interpose. The correctness of this interpretation would seem so clear, that were it not that a learned and able justice of the supreme court, in the late case of *Mott* v. *Dunn* (10 *How. Pr. R.*, 225), came to an opposite conclusion, I should deem it unnecessary to go farther. That

case, in most of its essential features, was identical with this. The plaintiffs, who there, as here, were simple contract creditors, sought in the same suit to recover a judment for their debt, to set aside an assignment made before the suit was commenced, as fraudulent, to compel an account from the assignees, who were made parties to the suit, and to obtain the appointment of a receiver, to take charge of the effects of the debtor. The assignees demurred to the complaint, and the court overruled the demurrer and gave judgment for the plaintiff. This decision necessarily assumes that the Code has placed not only simple contract and other creditors at large upon the same footing, in equity, as judgment creditors, but that it authorizes the union of an action at law, to recover a simple judgment for a debt, with a proceeding calling for the exercise of those extraordinary powers which appertain solely to a court of equity. The learned justice refers, in support of his deci sion, to § 69 of the Code, which declares that "the distinc tion between actions at law and suits in equity, and the forms of all such actions and suits heretofore existing, are abolished;" and as this section is thus brought in aid of the interpretation given to the last clause of § 269, it is doubt less proper to bestow upon it a passing notice.

What are the distinctions between actions at law and suits in equity? The most marked distinction obviously consists in their different modes of relief. In the one, with a few isolated exceptions, relief is invariably administered, and can only be administered, in the form of a pecuniary compensation in damages for the injury received; in the other, the court has a discretionary power to adapt the relief to the circumstances of the case. By what process can these two modes of relief be made identical? It is possible to abolish one or the other, or both, but it certainly is not possible to abolish the distinction between them. The legislature may, unless prohibited by the constitution, enact that no court shall hereafter have power to grant

Reubens *against* Joel.

any relief, except in the form of damages, and thereby abolish all suits in equity; or that all courts shall have power to mould the relief to suit the particular case, and thereby virtually abolish actions at law as a distinct class. To illustrate by a single case: they may provide that where a vendor of land, who has contracted to sell and received the purchase money, refuses to convey, the vendee shall have no remedy but an action for damages, or, on the other hand, that he shall be confined to a suit for a specific performance; but it is clearly beyond the reach of their powers to make these two remedies the same. Another leading distinction between common law actions and suits in equity consists in their different modes of trial. The former are to be tried by a jury, the latter by the court. Can the legislature abolish this distinction? They might, but for the restraints of the constitution, abolish either kind of trial, or re-classify the classes to which they apply; but they cannot make trial by jury and trial by the court the same thing. It is plain that the only way in which the declaration contained in § 69, that "there shall be in this state hereafter but one form of action for the enforcement or protection of private rights, and the redress of private wrongs," can be made good, is by abolishing both the form of trial and the mode of relief in one or the other of the two classes of actions. When this is done, and not till then, shall we have one homogeneous form of action for all cases. Has the legislature power to do this? The constitution contains the following provisions, viz: "There shall be a supreme court, having general jurisdiction in law and equity." (*Art.* 6, § 3.) The legislature shall have the same power to alter and regulate the jurisdiction and proceedings in law and equity as they have heretofore possessed (§ 5.) The testimony in equity cases shall be taken in like manner as in cases at law. (§ 10.) Will it be contended, in the face of these provisions, that the legislature has power to abolish the jurisdiction of the courts, either at

Reubens *against* Joel.

law or in equity? The constitution gives to the supreme court general jurisdiction both in law and equity. Can this be taken away? It authorizes the legislature to " alter and regulate" both jurisdictions. Does this mean that it may abrogate them?

It is, in my judgment, clear that the legislature has not the constitutional power to reduce all actions to one homo geneous form; because it could only be done by abolishing trial by jury, with its inseparable accompaniment, compensation in damages, which would not only conflict with art. 1, § 2, which preserves trial by jury, but would in effect subvert all jurisdiction at law, as all actions would thereby be rendered equitable; or, by abolishing trial by the court, with its appropriate incident, specific relief, which would destroy all equity jurisdiction and convert every suit into an action at law.

If we recur to the proceedings of the convention which framed the constitution, all doubts as to its true construction in this respect will be removed. The committee on the judiciary reported on the 1st day of August, and in that report, § 3, providing for a supreme court, reads as follows: " There shall be a supreme court, having the same jurisdiction in law and equity which the supreme court and court of chancery now have, subject to regulation by law." On the 10th of August, a member moved to add to the report the following: " And to the end that ultimately the jurisdiction of law and equity may not be separately administered, and that the two may be blended into one harmonious system, the legislature shall provide by law, as far as may be, a common form of procedure for remedies arising under both jurisdictions." This proposition was afterwards modified so as to read: " The legislature shall provide by law for a uniform system of procedure in the administration of justice in civil cases, without regard to the distinctions heretofore had between different forms of action and different jurisdiction in law and equity." After a week's debate

upon this and kindred propositions, calling forth most of the eminent legal talent and learning in the convention, all the propositions looking to a blending of the modes of proceeding in the two jurisdictions were rejected, and the section was adopted as it now stands in the constitution. (*Vide Debates in Conv., Atlas ed.*, 481 *to* 582.) Thus, it will be seen that section 69 of the Code is an attempt to exercise a power which the convention, in framing the constitution, expressly refused to confer upon the legislature.

In the case of *Parsons* v. *Bedford and al.* (3 *Peters*, 433), the supreme court of the United States put a construction upon that clause in our national constitution (*art.* 3, § 2) which declares: " That the judicial power shall extend to all cases in law and equity arising under the constitution, the laws of the United States, and treaties made or which shall be made under their authority," &c., taken in connection with the 7th amendment, which provides that " In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved; and no fact once tried by a jury shall be otherwise reëxaminable in any court of the United States than according to the rules of the common law." The legislature of Louisiana had enacted " That when any cause shall be submitted to a jury to be tried, the verbal evidence shall in all cases, where an appeal lies to the supreme court, if either party require it, and at the time when the witnesses shall be examined, be taken down in writing by the clerk of the court, in order to be sent up to the supreme court to serve as a statement of facts in case of appeal." And by a law of the United States, passed the 26th of May, 1824, the mode of practice pursued in the courts of Louisiana is directed to be followed in the courts of the United States in that state. Upon the trial of the cause in the United States district court, before a jury, it being a common law action to recover a debt, the defendant applied to the court to have the testimony taken down pursuant to the statute

and the practice in that state, with a view to an appeal, which the judge refused, upon the ground, as it would seem, that it was a common law action, and the facts could not be reviewed.   Upon writ of error to the supreme court, it was argued for the plaintiff in error that there was no distinction between law and equity in the State of Louisiana; and that if that distinction was recognized in the United States court, in proceedings in that state, it would become necessary to introduce the forms of the common law there, which would be productive of great inconvenience.   But the court held that the distinction, being recognized in the constitution, could not be abolished by state legislation nor disregarded by the courts.   Judge Story says: " The constitution has declared, in the 3d article, that the judicial power shall extend to all cases in law and equity, &c.'' " It is well known that in civil causes, in courts of equity and admiralty, juries do not intervene, and that courts of equity use the trial by jury only in extraordinary cases, to inform the conscience of the court.   When, therefore, we find that the amendment requires that the right of trial by jury shall be preserved in suits at *common law*, the natural conclusion is, that this distinction was present to the minds of the framers of this amendment.   By *common law*, they meant what the constitution denominated in the 3d article ' law;' not merely suits which the common law recognized among its old and settled proceedings, but suits in which *legal rights* were to be ascertained and determined, in contradistinction to those where *equitable rights* alone were recognized and equitable remedies were administered.'' This case is a direct authority to show, what, indeed, is plain without authority, that the constitution, by conferring jurisdiction in " law and equity," has not only recognized the distinction between them, but placed that distinction beyond the power of the legislature to abolish; which, as has been shown, it could only do by abolishing one or the other of the two jurisdictions.

But the legislature, in the specific provisions adopted by it, has not attempted to carry into effect the general declaration made in § 69. By § 253, it is provided that " An issue of fact, in an action for the recovery of money only, or of specific real or personal property, or for a divorce from the marriage contract on the ground of adultery, must be tried by a jury, unless a jury trial be waived, as provided in § 266, or a reference be ordered, as provided in §§ 270 and 271;" and by § 254, " that every other issue is triable by the court, which, however, may order the whole issue, or any specific question of fact involved therein, to be tried by a jury, or may refer it, as provided in §§ 270 and 271.". Again, § 275 provides that " the relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint, but in any other case the court may grant him any relief consistent with the case made by the complaint and embraced within the issue ;" and § 276, that " whenever damages are recoverable, the plaintiff may claim and recover, if he show himself entitled thereto, any rate of damages which he might have *heretofore* recovered for the same cause of action."

Instead of being abolished, the essential distinctions between actions at law and suits in equity are by these. sections expressly preserved. Actions at law are to be tried by a jury; suits in equity by the court. Damages are to be given, as heretofore, in the former, and specific relief in the latter. The only change, in classification even, is in respect to certain actions for a divorce, which are made in all cases triable by jury.

The same distinction is kept up in the provisions in regard to costs. In the cases mentioned in § 304, which are actions at law, costs are allowed, of course; while in other actions, that is, in equity suits, they rest, by virtue of § 306, as formerly, in the discretion of the court.

As § 69, therefore, is plainly in conflict, not only with the constitution, but with the subsequent provisions of the

Code itself, it cannot aid us in putting the proper construction upon § 219.

It becomes necessary, then, to construe the latter section by itself; and if we carefully scrutinize its provisions, it will be found to bear upon its face unmistakable evidence of a discrimination by the legislature, in its enactment, between actions at law and suits in equity. The first branch of the section plainly applies to the latter class of actions exclusively. It provides that, when the relief demanded in the complaint "consists in restraining the commission or continuance of some act," or where, during the litigation, it shall appear that the defendant is doing or threatens to do some act in violation of the plaintiff's rights "*respecting the subject of the action,*" a temporary injunction may be granted, &c. Now, it is manifest that this provision can only apply to suits in equity, or to suits made triable by the court, which is the same thing. The terms used incontrovertibly establish this. It is equally clear that, if the remaining branch of the section had not been intended to apply to actions of a different class, there would have been no necessity for inserting it as a separate and distinct provision. A few additional words would have included it in the previous clause. The only class of actions not provided for by that clause is actions at law, that is, actions which are made triable by jury, and to this class, therefore, it was clearly intended to apply. The last clause is the only part of the section which contains anything new, the previous portion being in substance a mere embodiment of established equity principles.

Regarding it in this light, we can see a sound legal reason why the provision should be limited solely to cases of prospective fraudulent transfers, because, if extended to cases where the alleged fraud had been consummated and the property actually assigned, it would become necessary to bring in the assignee as a party, which would tend to confusion and be impracticable, as it would convert an action

sounding only in damages, and to be tried by a jury, into an action seeking equitable relief and triable by the court.

The interpretation given to the section in question by the superior court was for these reasons, in my opinion, clearly correct, and the judgment must therefore be affirmed, with costs.

**Judgment affirmed.**