HEARD NOVEMBER TERM, 1878.

CASE No. 718.

ADGER & CO. v. JOHN JULIUS PRINGLE ET AL.

1. Making creditors of an ancestor parties defendant to an action brought by mortgagees of the heirs-at-law to subject the descended and subsequently-mortgaged real estate to sale, and to procure distribution of the proceeds, is a question of pleading and practice, and not of jurisdiction, and consent of parties is a waiver of objection.
2. The creditors of the ancestor are proper parties to such action.
3. After issue joined and testimony taken, the mere announcement by plaintiffs at a reference that they withdraw their claim as against some of the defendants will not operate as a dismissal of the complaint against such defendants.
4. Whether a debt of the ancestor is discharged by the bond of the heirs is a question of fact depending upon intention. It is not payment, unless so accepted by the creditor, and the burden of proof is upon the party affirming it.
5. The concurrent finding of a question of fact by referee and Circuit judge is conclusive upon this court, unless such finding is without testimony to sustain it, or is manifestly against the weight of evidence.
6. When bond and mortgage are taken to secure the payment of book account for present and future advancements, and a promissory note for a part of the account is afterwards taken, but not entered upon the books of mortgagee, and is then endorsed before maturity for valuable considera-

tion to one ignorant at the time of the existence of the bond and mortgage, which are afterwards assigned to secure a debt to a creditor, who examines the books and knows nothing of the note—upon sale of the mortgaged premises the proceeds should be applied *pro rata* to the note, and to the balance of indebtedness of mortgagors to mortgagee. *Semble*, and per WALLACE, Circuit judge.

7. Mortgage by heirs-at-law of lands descended, before action brought by creditors of the ancestor, will be postponed to debts of such creditors.

Before WALLACE, J., at Charleston, March, 1878.

This was an action brought by Adger & Co. against the widow and children of J. J. I. Pringle, certain persons claiming to be bond creditors of the deceased, and certain creditors of the widow and children. The facts are clearly set forth in the report of G. D. Bryan, Esq., special referee. His report is as follows:

By an order of the said court, of date the       day of       , A. D. 1875, the above cause was referred to me to hear and determine the issues of fact and the issues of law raised therein, and report the findings thereon to the said court separately.

I find the following facts:

On the 11th of March, 1864, John Julius Izard Pringle departed this life, leaving as his heirs-at-law his widow, Mrs. Jane Pringle, his three sons, John Julius Pringle, Joel R. Poinsett Pringle and D. Lynch Pringle, and his daughter, Mary Izard Pringle (now Madame Mary Izard Des Frances); and seized of the following real estate, to wit: White House plantation, situated on the Pee Dee river, containing about two hundred and forty acres of swamp or rice land, and fifty acres of charred pine or rice land; and Greenfield plantation, situated on Black river, containing about one hundred acres of swamp or rice land, and one thousand nine hundred acres of pine or high land; and also of considerable personalty, consisting chiefly of negro slaves, which latter property was all lost by the results of the late war. By the last will of the said John J. I. Pringle, Mrs. Jane Pringle, his wife, was named as executrix, but no disposition was made of his property. Joel R. Poinsett Pringle was killed during the late war; he was unmarried and died intestate.

At the time of the death of the said John Julius Izard Prin-

gle, there was due from time to time to Alexander Robertson and John F. Blacklock, a bond in the penal sum of $7000, conditioned for the payment of the sum of $3500, and of date the 22d of January, 1856. This bond was, on the said 22d of January, 1856, assigned by the said Alexander Robertson and John F. Blacklock to Mrs. Mary C. Allston, and under her will was assigned by her executors, on the 23d of January, 1860, to Mrs. Anna J. Gadsden, one of the defendants herein. There was also due from the said John Julius Izard Pringle to Alexander Robertson and John F. Blacklock, as executors of Mrs. Mary C. Allston, a bond in the penal sum of $12,000, conditioned for the payment of the sum of $6000. Both of the bonds were destroyed or lost during the late war.

On the 10th of October, 1866, the defendants, Mrs. Jane Pringle, John Julius Pringle, D. Lynch Pringle, and Madame Mary Izard Des Frances (then Mary Izard Pringle,) being then the surviving heirs of the said John Julius Izard Pringle, made and delivered to the defendant, Mrs. Anna J. Gadsden, their joint and several bond, in the penal sum of $7000, conditioned to pay the full and just sum of $3500, in three equal annual installments, with interest from the 22d of January, 1865, which bond was given in substitution for and renewal of the bond of the said J. Julius Izard Pringle, lost or destroyed, as aforesaid. The interest on this bond has been paid up to the 22d of January, 1874.

On the 17th of February, 1867, the defendants, Mrs. Jane Pringle, John Julius Pringle, and D. Lynch Pringle, and Madame Mary Izard Des Frances (then Mary Izard Pringle,) the surviving heirs of John Julius Izard Pringle, made and delivered to Alexander Robertson and John F. Blacklock, executors of Mary C. Allston, their joint and several bond, in the penal sum of $12,000, conditioned for the payment of the full and just sum of $6000, in four equal successive annual installments, with interest payable annually—which bond was given in substitution for and renewal of the bond of the said John Julius Izard Pringle, lost or destroyed as aforesaid. This bond was thereafter assigned by the said Alexander Robertson and John

2 L

F. Flacklock, executors, to the defendants, Mary A. Lide and B. A. Lide.

After the death of the said John Julius Izard Pringle, his wife and children took possession of the plantations "White-house" and "Greenfield," and planted them for the benefit of the estate, but, owing to large losses, no profits were derived therefrom. The money for this purpose was obtained from James R. Pringle, James R. Pringle & Son, and James R. Pringle & Co.

On the 31st of March, 1870, the defendants, Mrs. Jane Pringle, John Julius Pringle, D. Lynch Pringle, made and delivered to James R. Pringle, and James R. Pringle, the younger, under the firm name of James R. Pringle & Son, their joint and several bond, in the penal sum of $50,000, conditioned to pay the said James R. Pringle & Son the said sum of $50,000, or so much thereof as would repay, indemnify and hold harmless the said James R. Pringle & Son for and from any loss, for any then present, or any future loans or advances made by them to the said obligors, on their individual accounts, or on account of any then present or future loans or advances, and such interest thereon as might be agreed upon, as at that time had been or might thereafter be made, from time to time, by the said obligees, for or on account of Whitehouse plantation, Keithfield mills and Keithfield plantation, and Greenfield plantation, and the expenses, management, and cultivation of said plantations and mills, the amount of the indebtedness of the said obligors to the said obligees, whether on their individual account or on account of the said plantations and mill, to be ascertained at any time by reference to the books of account of the said obligees, James R. Pringle & Son. To secure the performance of the conditions and covenants in the said bond contained, the said obligors on the same day, to wit, the 31st of March, 1870, executed and delivered to the said James R. Pringle & Son a mortgage of all their right, title, interest and estate in and to the said Whitehouse and Greenfield plantations and Keithfield plantation and mills, which mortgage was duly recorded in the proper office.

On the same day, to wit, the 31st of March, 1870, the defendant, Madame Mary Izard Des Frances (then Mary I. Pringle,) made and delivered to the said James R. Pringle & Son, her

bond in the sum of $5000, and thereby covenanting to save harmless the said James R. Pringle & Son from any loss which they might sustain for or on account of any then present or any future loans or advances, which they had or might make to her individually, or on account of her proportion, being two-ninths of any advances which had or might be made on account of the plantations known as Whitehouse and Greenfield—the said indebtedness to be ascertained by reference to the books of account of the said James R. Pringle & Son. To secure this bond she executed and delivered to the said James R. Pringle & Son a mortgage of all her right, title and interest and estate in and to the said two plantations, Whitehouse and Greenfield, which said mortgage was duly recorded. At the time of the execution and delivery of these two bonds and mortgages, the obligees, James R. Pringle & Son, knew that the bonds held by the defendants, Mrs. Anna J. Gadsden, Mrs. Mary A. Lide and B. A. Lide, as aforesaid, were unpaid, and were debts due by the estate of John Julius Izard Pringle. These two bonds and mortgages were, on the 11th day of August, 1871, assigned to the plaintiffs, James Adger & Co., by James R. Pringle & Son, and were taken by the said plaintiffs at a valuation of $30,000, which was about the amount of the indebtedness of the obligors to James R. Pringle & Son, as appeared from their books of account, and which was ascertained at that time by the plaintiffs, James Adger & Co. The consideration of the assignment was loans and endorsements made by the plaintiffs to and for James R. Pringle & Son. The bonds and mortgages have ever since been held by the plaintiffs.

The said James R. Pringle and James R. Pringle, the younger, continued their business under their firm name of James R. Pringle & Son, until the 8th day of May, 1872, when the partnership was dissolved by the death of James R. Pringle, the younger. At that time the obligors of the said bonds were indebted to the said firm, as follows:

| | |
|---|---:|
| Mrs. Jane Pringle | $1,704 10 |
| Est. J. J. Pringle, (Whitehouse) | 21,012 82 |
| Keithfield Mills | 6,186 80 |
| Keithfield Plantation | 15,435 60 |
| | $44,339 32 |

And to the credit of the said obligors, as follows:

| | | |
|---|---|---|
| John Julius Pringle...................................... | $9 | 78 |
| D. Lynch Pringle.................................. | 258 | 28 |
| Greenfield Plantation............................... | 264 | 83 |
| | | $332 89 |

Leaving a balance due of.........................     $43,806 43

of which amount $4610.66 is chargeable to Madame Mary Izard Des Frances.

James R. Pringle continued business under the firm name of James R. Pringle & Son, and on the 10th of April, 1873, the defendants, Mrs. Jane Pringle, John Julius Pringle, and D. Lynch Pringle, made and delivered to him, doing business under the said firm name of James R. Pringle & Son, their joint and several bond in the sum of $50,000, with the same conditions and covenants as were contained in their bond of date the 31st of March, 1870, to the then firm of James R. Pringle & Son, and as are above set forth; and to secure the performance of the conditions of this bond, made their mortgage of the same property as is described in this first mortgage to the said James R. Pringle & Son, of date 31st of March, 1870, and above set forth. On the same day, to wit, the 10th of April, 1873, Madame Mary Izard Des Frances, (then Mary Izard Pringle,) made and delivered to the said James R. Pringle, doing business under the firm name of James R. Pringle & Son, her bond, in the sum of $8000, with the same conditions and covenants as were contained in her bond of date the 31st of March, 1870, to the then firm of James R. Pringle & Son, as are above set forth, and to secure the performance of the conditions of the said bond, made her mortgage of all her right, title and interest in and to the said Greenfield and Whitehouse plantations. These mortgages were recorded in the proper office, and were immediately upon their execution and delivery assigned to James Adger & Co., the plaintiffs, together with the debts due thereunder, and have ever since been held by them. James R. Pringle continued business under the said firm name of James R. Pringle & Son, until the 1st of September, 1873, when the firm ceased to exist; at which time the obligees of the said bonds were indebted to him as follows:

November Term, 1878.

| | | |
|---|---:|---:|
| John Julius Pringle.................................................... | $84 | 56 |
| Est. J. J. I. Pringle................................................... | 25,465 | 26 |
| Mrs. Jane Pringle..................................................... | 768 | 05 |
| Keithfield Mills........................................................ | 14,588 | 90 |
| Keithfield Plantations............................................... | 22,450 | 52 |
| Greenfield Plantation................................................ | 1,069 | 01 |
| | $64,426 | 30 |
| And to the credit of D. Lynch Pringle..................... | 131 | 79 |
| Leaving a balance due of...................................... | $64,294 | 51 |

Of which the sum of $4896.50 is due and owing by the defendant, Madame Mary Izard Des Frances.

On the 29th of December, 1870, the defendants, Mrs. Jane Pringle, John Julius Pringle, D. Lynch Pringle, and Madame Mary Izard Des Frances, (then Mary Izard Pringle,) being indebted to James R. Pringle & Son, on the books of the said firm, in the sum of $36,851.18, made their promissory note at six months, for the sum of $6500, to Jas. R. Pringle, for the purpose of raising money, or of lightening the said account. The note was not credited on the account. On the 13th of April, 1871, this note was, with other securities, delivered by Jas. R. Pringle & Son to the defendant, A. G. Rice, as collateral to secure their note to him for the sum of $28,427.91, at twelve months from said 13th of April, 1871. The defendant, A. G. Rice, did not know of the bonds of indemnity, nor of the mortgages securing the same, nor did he know the consideration or purpose for which the note for $6500 had been given to James R. Pringle.

Before the commencement of this action, an agreement was made by the counsel for the plaintiffs and the counsel for the defendants, Mrs. Mary A. Lide, B. N. Lide, Mrs. Anna J. Gadsden, A. G. Rice and J. M. Eason & Bro., whereby, among other things, it was agreed that they "the undersigned, creditors, claiming an interest, under or by way of mortgage upon certain plantations in Georgetown county, known as Keithfield mills and plantation and Greenfield and Whitehouse plantation, owned by Mrs. Pringle and her sons and daughter, do consent and agree,

in view of the failure during the past year to make any payment
on our respective debts, that an immediate action for foreclosure
and sale of the said property be commenced by Messrs. James
Adger & Co., in the Court of Common Pleas for Charleston
county, in which we may all be made parties or come before the
court, and in which all conflicting claims may be adjudicated.
*   *   *   This agreement to be without prejudice to the rights
of any party interested." A copy of this agreement, and a copy
of the testimony from which the foregoing facts appear, is filed
with this report.

The property which is the subject of this action, has been sold
under the order of this court, and brought the following sums,
to wit:

| | |
|---|---:|
| Keithfield Mills and Plantation...... ......... ......... | $10,005 00 |
| Greenfield Plantation......... ......... ......... ......... | 4,050 00 |
| Whitehouse......... ...... ...... ......... ...... ......... | 6,900 00 |
| | $20,955 00 |

The proceeds of which have been applied under the orders of
this court as follows:

| | | |
|---|---:|---:|
| Sheriff's commissions on Keithfield Mills and Plantation......... ......... ......... ......... ......... ......... | $104 | 05 |
| Advertising sale of same......... ......... ...... ......... | 27 | 20 |
| Taxes on same......... ......... ......... ......... ......... | 299 | 49 |
| Paid B. H. Rutledge, trustee, and Mrs. Sarah Goodrich ...... ......... ......... ...... ......... ...... . | 9,574 | 26 |
| | $10,005 | 00 |

| | | |
|---|---:|---:|
| Sheriff's commissions on Greenfield and Whitehouse ......... ...... ......... ......... ...... ......... ...... | $117 | 00 |
| Advertising sale of same......... ......... ...... ......... | 54 | 40 |
| Taxes on same......... ...... ...... ......... ...... ......... | 246 | 83 |
| Recording mortgage...... ......... ......... ...... ......... | 3 | 25 |
| | $421 | 48 |

Leaving in the referee's hands the sum of $10,528.52 and
interest, from the sale of Greenfield and Whitehouse planta-
tions.

The following are the issues of law:

I. The defendant, A. G. Rice, claims that he is entitled to be first paid out of the proceeds of sale of Greenfield and Whitehouse plantations the sum of $6500, with interest from the 29th of June 1871, on the ground that the plaintiffs hold the mortgages as trustees for the payment of the note held by him; the transfer of the note to him by Pringle & Son, carrying with it the equitable assignment of so much of the account due by the Pringles to Pringle & Son, secured by the bonds of indemnity. The whole theory of the claim is based on the supposition that Pringle & Son were the sureties of the Pringle family (the makers of the note,) and that the defendant, Rice, is entitled to any securities which the surety might hold, upon the failure of the principal to pay the debt. The note was given either in payment of so much of the account as stood against the makers on the books of Pringle & Son, or to enable Pringle & Son to raise money. If for the payment of the account, then so much as it represented was extinguished; and if extinguished, there could have been not only no equitable assignment, but no legal assignment of the same. As matters of law, I find that if the note was given as representing any portion of the accounts due by the Pringles to Pringle & Son, it was in payment of the same, made so by the subsequent transfer to the defendant, A. G. Rice; for by this act they put the note out of their possession and beyond their control, and thereby extinguished that portion of the account which it represented. Although the receiving of a note is not payment, unless received as such, yet if the creditor place the note beyond his power and control, so that it cannot be delivered up to be canceled, the note is payment and the original cause of action is extinguished. *Townsend & Arnold* v. *Stevenson & Walker*, 4 *Rich.* 59. And the same rule was made in the case of *Christian* v. *Johnson, Adm'r.*, 2 *Bail.* 575. So, then, if the note represented any portion of the account then due, the parting with it by Pringle & Son operated as a payment. But if the note was given to James R. Pringle for the purpose of raising money, and not with reference to the account, it was an independent transaction, and in no way connected with the bonds of indemnity now held by the plaintiffs; and if not connected,

then there can be no equity by which the defendant, Rice, can maintain his claim that the bonds are held by the plaintiffs as trustees for him.

The conditions and covenants of the bonds are too plain to leave any doubt on this point, for they were solely to save harmless Pringle & Son for any moneys which they might advance to the obligors on their individual accounts, or on account of their planting operations, under neither of which could the note be placed—if an independent transaction between them—and certainly Adger & Co., the assignees, who took these bonds at a valuation obtained from the books of account of Pringle & Son (which were made the standard of value by the obligators), the equity (if any) of the defendant, Rice, cannot prevail.

Besides this, the bonds of indemnity were not given to Pringle & Son as sureties, but as principals, and they dealt with them as such when they transferred them to Adger & Co. for the sum of $30,000, since ascertained, by a sale of the property, to be three times their value. And, in purchasing the bonds and mortgages, Adger & Co. ascertained the sums due thereunder by referring to the accounts of the obligors, in all respects complying with the contract between the parties as contained in the said bonds.

The claim of the defendant, Rice, must therefore be disallowed.

The defendants, J. M. Eason & Bro., Smith & Valk, Bollman Bros., and Edwin Bates & Co., make similar claims. These claims stand on even more untenable grounds than that of the defendant, Rice, for the debts were contracted after the assignment of the bonds and mortgages to Adger & Co., and after the securities had been exhausted by Pringle & Son, and until paid, and they were not a charge by Pringle & Son against the obligors of the bonds. *Wright* v. *Whitney*, 40 *Barb*. 325.

These claims are therefore not allowed.

II. On behalf of the defendants, Mrs. Mary A. Lide, B. N. Lide and Mrs. Anna J. Gadsden, it is claimed, that holding debts against the ancestor of the obligors of the bonds (his heirs) they have a statutory lien, which should be satisfied before the bonds of indemnity given by the heirs, and secured by the property descended, are paid.

I have been unable to find any authority for the position

taken by these defendants. On the contrary, the statute expressly provides that when the lands are *bona fide* aliened, set over or transferred by the heir before action brought against him, the descended lands shall not be liable to an execution issued or a judgment obtained against him on account of a debt due by his ancestor, but that the heir shall be liable to the extent of the value of the lands so aliened. This, then, is entirely inconsistent with the idea that the creditor of the ancestor has a lien, statutory or otherwise, upon his lands in or out of the possession of the heir. The creditor can, in a proper suit brought against the heir in possession, or against the executor or administrator, if the heir be out of possession, subject the real estate of the ancestor to the payment of his debt; but beyond this the law gives him no power or lien over or on the lands of his deceased debtor, and if the heir alien, before such suit is brought, the creditor can recover, not from the purchaser, but only from the heir, the value of the lands so aliened. In this case the heirs of John Julius Izard Pringle, *bona fide,* and for a valuable consideration, mortgaged the lands descended, and this brings us to an issue made, and upon the determination of which the claims of Mrs. Mary A. Lide, B. N. Lide and Mrs. Anna J. Gadsden depend, to wit: Is a mortgage by the heir, before suit brought against him, such an alienation of his ancestors' real estate as would prevent the same being taken on execution, on a judgment recovered against the heir in possession, upon a debt due by his ancestor?

Upon the death of John Julius Izard Pringle, the fee to his real estate passed into his heirs-at-law, his widow, two sons and daughter, and they certainly had the right (until suit brought by a creditor of his) to deal with it as their own. If they had conveyed the property absolutely, for a valuable consideration and *bona fide,* to Pringle & Son, there could have been no question between the defendants, Mrs. Lide, B. N. Lide and Mrs. Gadsden, and the purchasers. But by the mortgages, though the lands were not absolutely conveyed, the heirs did sell, alien and make over to Pringle & Son certain estate in the lands, which they could not again recover except upon the compliance with certain conditions. For this Pringle & Son have given a valu-

able consideration, and, so far as that consideration extends, stand on the same footing as if they had absolutely purchased the land.    Mortgagees are purchasers *pro tanto*, and as such are entitled as against the creditors of the ancestor and his legatees. *Haynsworth* v. *Bischoff*, 6 *Rich.* (*N. S.*) 159 ; *Ex parte L. A· Seabrook, U. S. C. C., Dist. of S. C., April Term,* 1871.    I therefore find that Adger & Co., the assignees of the mortgagees, are entitled to be first paid out of the proceeds of the sale of Greenfield and Whitehouse plantations.

The claims of Mrs. Mary A. Lide, B. N. Lide and Mrs. Anna J. Gadsden, having been disallowed, it is unnecessary here to consider the question of jurisdiction made by the defendant, Rice, as to them.

The proceeds of the sale of Greenfield and Whitehouse plantations, and Kiethfield mills and plantation, being insufficient to pay the mortgages held by the plaintiffs, the defendants, Marie Yean, Edmond Colas Des Frances, and Mary Izard, his wife, have no interest therein under the marriage settlement as set forth in the complaint in this cause.

I find that the plaintiffs, James Adger & Co., are entitled to the proceeds of sale of Greenfield and Whitehouse plantations, and after the payment of the bonds, with interest at the rate of seven per cent. per annum, held by B. H. Rutledge, trustee, and Mrs. Sarah M. Goodrich, are entitled to the proceeds of Keithfield mills and plantation.

To this report exceptions were taken by the defendant, A. G. Rice, and also by the defendants, Mrs. Lide and Miss Gadsden. The decree of his Honor the Circuit judge is as follows :

After hearing the report of George D. Bryan, Esq., referee herein, and the argument of counsel, it is ordered that the findings of facts by the referee be confirmed.

John Julius Izard Pringle, in his lifetime, executed the two bonds, described in the record as the Gadsden and Lide bonds. These bonds were destroyed by fire after the death of the obligor.

The referee finds, as matters of fact, that for these bonds other bonds were executed by all the heirs of the original obligor, and that these new bonds were in substitution of the original bonds,

and were not accepted by the holders in payment of the original bonds.

I concur with the referee in this finding. It follows that the Gadsden and Lide bonds are a charge upon the estate of J. J. I. Pringle. See *Drake, Clerk,* v. *Mitchell,* 3 *East* 251 ; *McLure* v. *Askew,* 5 *Rich. Eq.* 166.

The heirs of John Julius Izard Pringle, on the 31st of March, 1870, executed a bond to James R. Pringle & Son, secured by a mortgage of all the real estate that had descended to them as such heirs. Are the Gadsden and Lide bonds postponed, in the order of payment, to this bond and mortgage?

James R. Pringle himself testifies that he knew of the existence of the bonds, both before and after the substitution of the new bonds. He certainly, therefore, cannot bring himself within the rule that protects an innocent purchaser for valuable consideration without notice. Nor is his assignee on a better footing. James R. Pringle says, " I transferred them [the bond and mortgage] to Adger & Co. because I owed them money, and because they had endorsed for me." Adger & Co., therefore, did not take the bond and mortgage for cash paid to Pringle, but to cover an antecedent indebtedness of Pringle to them, and took them, therefore, with the same rights under them that Pringle had, and no more.

I therefore find, as matter of law, that the Gadsden and Lide bonds are not postponed to the bonds and mortgages to James R. Pringle & Son, and assigned by them to James Adger & Co.

The defendant, A. G. Rice, is the holder of a promissory note, made by the same persons who executed the above-mentioned bond and mortgage to James R. Pringle & Son. This note was made payable to James R. Pringle, endorsed by him to James R. Pringle & Son, and endorsed by them to A. G. Rice, on the 13th of April, 1871, as a collateral.

At the time this note was made, the makers were lawfully indebted to James R. Pringle & Son for advances. To secure payment for these advances, the bond and mortgage above referred to had been executed on the 31st of March, 1870. The note was given to enable James R. Pringle & Son " to raise money and lighten the account" of the makers. There was no

other consideration for the note. The note therefore represented the account *pro tanto*, and, while in the hands of James R. Pringle & Son, was protected by the bond and mortgage, as he had his remedy either upon the account or note, as he might elect. When he endorsed the note to Rice, the account *pro tanto*, in a sense, was extinguished; that is, James R. Pringle & Son no longer had any remedy upon that part of the account represented by the note endorsed to Rice, simply because they had transferred to Rice a remedy to collect an amount of money represented both by the account and note, and as the debtors could be compelled to pay it only once, it would be a fraud upon Rice to allow Pringle to collect the account and leave the note in Rice's hands, valueless. It cannot be said that the account, to the amount of the note, was finally and forever extinguished in the sense of having been paid, for if Pringle & Son had paid the note to Rice, and resumed possession and ownership of it, their remedies upon the account would have instantly revived.

The account, therefore, was not extinguished in the sense of being paid, by the transfer of the note to Rice; and as the note represented a part of the debt secured by the bond and mortgage, the note is still protected by the bond and mortgage, after its endorsement to Rice, and in his hands. *Wright* v. *Eaves*, 10 *Rich. Eq.* 585, and authorities there cited.

Rice's equities are not altered by the subsequent assignment of the bond and mortgage to Adger & Co. The bond and mortgage were given to secure the whole account of the Pringle family. The debt to be secured was the account. The amount of the condition of the bond was to be ascertained by the books of Pringle & Son.

Suppose the Pringle family, instead of making a note, had paid James R. Pringle & Son $6000 in cash, and the credit had not been entered on the books of the firm. It will hardly be contended that, as against any assignee of the bond, the obligors would not have been allowed to set up the credit. So if the books mislead an assignee, it is the fault of Pringle & Son, and the assignee takes the bond and mortgage subject to what the books ought to show, and this is more especially so when he takes these securities to cover an antecedent debt and of the assignor.

The debt of the Pringles to James R. Pringle & Son, being in effect part of the bond secured by the mortgage, and a part of the debt being endorsed to Rice, and the remainder assigned to Adger & Co., Rice's claim and the claim of Adger & Co. rest on the same plane. Neither has any priority of the other, and must be paid ratably out of any funds remaining after the satisfaction of the Gadsden and Lide bonds.

It is needless to discuss, in this decree, the rights of the other creditors of the Pringle family. The whole fund in court will be exhausted by the claims, the priorities of which have been above discussed. Nor is it necessary to discuss the propriety of dismissing the complaint, as to the holders of the Gadsden and Lide bonds.

They were made parties to the suit originally. The whole estate of John Julius Izard Pringle has been sold by the order of this court and by consent of parties. The fund realized from the sale is, in effect, in court. To dismiss the complaint now as to the holders of these bonds, and to divide the fund in court among the remaining parties, would be to defeat utterly the claims of parties who have the first and highest demand against the estate.

It is therefore ordered, adjudged and decreed that the referee, George D. Bryan, Esq., do pay out of any funds in his hands, realized from the sale of the Whitehouse and Greenfield plantations, sold as the property of the estate of the late John Julius Izard Pringle, the principal and interest due upon the Gadsden and Lide bonds. If there should not be sufficient funds in his hands to fully pay and satisfy said bonds, then they are to be paid ratably and in proportion.

If there should be any part of said funds remaining in his hands after the payment of the bonds aforesaid, then that he do pay such balance to the debt secured by the bonds and mortgages assigned to Adger & Co., that is to say, upon the note held by A. G. Rice, and the balance of the account assigned to James Adger & Co., these two demands to be paid ratably and in proportion.

From this decree the plaintiffs appealed, upon the following grounds :

1. Because his Honor the presiding judge has erred in decreeing that the bonds of the testator, John Julius Pringle, once held by the defendants, Ann J. Gadsden and Mary A. Lide, are subsisting debts of his estate.

2. Because his Honor has further erred in decreeing that the said bonds, even if they be subsisting debts of the estate of John Julius Pringle, are entitled to be paid out of the proceeds of sale of the plantations, known as "Whitehouse" and "Greenfield," in priority to the bond and mortgage held by the plaintiff herein.

3. Because his Honor has further erred in decreeing that the note held by the defendant, A. G. Rice, is protected by the bonds and mortgages of the heirs of Pringle, assigned by Pringle & Son to the plaintiffs, and that said note is entitled to be paid ratably with the claim of the plaintiff.

The defendant, A. G. Rice, also appealed upon the following grounds:

1. From the portion of the decree which orders that the findings of fact by the referee be confirmed, because there was no evidence to sustain the finding of the referee that "the bonds held by Mary Alston Lide and Ann J. Gadsden were given in substitution and renewal of the bond of John Julius Izard Pringle, which had been lost or destroyed," and no evidence to sustain the finding of the decree that "the new bonds were not accepted by the holders in payment of the original bonds;" and also because the issue of whether said bonds were so given and accepted was not among the issues made by the pleadings or submitted to the referee by the order of reference.

2. That the conclusion of his Honor, as following from facts so assumed, "that the Gadsden and Lide bonds are a charge upon the estate of J. J. I. Pringle," has no proper basis for a decree upon pleadings and evidence, and is erroneous as a conclusion of law.

3. That James R. Pringle did not testify as a matter of fact, as stated in the decree, "that he knew of the existence of the bonds both before and after the substitution of the new bonds," and that his statement in regard to said bonds does not sustain the finding of the court below, either as matter of fact or conclusion of law.

4. That the decree is erroneous, in finding as matter of law that the Gadsden and Lide bonds are not postponed to the bonds and mortgages to James R. Pringle & Son.

5. That the decree is erroneous, in adjudging that the claim of Rice and the claim of Adger & Co., rest on the same plane, and that the claim of Rice has not priority over that of Adger & Co.

6. That the complaint should have been dismissed as to the defendants, Lide and Gadsden; and the decree is erroneous in holding that such dismissal would put the claims of said defendants in any worse plight than they were in before the sale, or would have been in if no sale had been made.

7. That the decree is erroneous, in ordering the referee to pay the Lide and Gadsden bonds out of the proceeds of the property mortgaged by defendants, who have been in undisputed possession and ownership both prior and subsequently to their alienation of the same.

*Mr. A. T. Smythe,* for plaintiffs.

*Messrs. Simonton & Barker,* for defendant, Rice.

*Mr. T. M. Hanckel,* for Miss Gadsden.

*Messrs. Lord & Inglesby,* for Mrs. Lide.

April 18th, 1879.   The opinion of the court was delivered by

McIVER, A. J.   The first question which we propose to consider is, whether the objection raised by the appellant, A. G. Rice, to the making of Mrs. Lide and Miss Gadsden parties, can be sustained.   This objection, it is to be observed, was not raised by any pleading, but was for the first time, taken in the argument before the referee.   It is based upon the ground that the action was brought simply for foreclosure of the several mortgages mentioned in the complaint, and that to such an action these persons, whose only claim is that of creditors of the ancestor of the mortgagors, could not be made parties.   We do not consider, however, that this position can be sustained, for the reason upon which it rests is not, in our judgment, well founded.

We do not regard the action as brought simply for the foreclosure of the mortgages. The agreement entered into by the several parties, through their attorneys, prior to the commencement of the action, the terms of which were substantially set forth in the complaint, together with the demand for relief, show very clearly that such was not the sole purpose of the action. It is very obvious that the numerous creditors of the Pringles saw that in any attempt to enforce their demands, whether against the ancestor or the heirs, many conflicting claims were likely to arise, which it would be necessary to have determined, and with a view to avoid multiplicity of suits and heavy expenses, they entered into the agreement above referred to. In pursuance of this agreement we find that the complaint states the claims of the various creditors, and prays judgment not merely for a foreclosure of the several mortgages, as in a case brought simply for that purpose, but also that the proceeds of the sales of the mortgaged property, after satisfying the costs and taxes, be applied " to the payment of the amounts of principal and interest due on the bonds and mortgages held by the plaintiffs, *and the claims of the parties defendants, according to their relative priorities, and so far as the same may be established before this honorable court."* Accordingly an order was granted, by consent of the attorneys of the several parties, for the sale of the mortgaged premises, in which it was provided that the proceeds of the sale, after paying costs and expenses, should be turned over to the referee, " to be distributed by him under the further orders of this court." This order also provided that until such sale should be effected the property should be placed in the hands of certain designated persons, to be planted and managed by them, and, after paying the expenses of such operations and the advances made for cultivating crops, &c., that the net proceeds be held "subject to the orders of this court, and to be distributed among the several parties hereto, as their several rights may appear."

While, therefore, one of the purposes of the action was to obtain judgment of foreclosure and sale, another was to have the various conflicting claims of the creditors adjudicated in this one action; and while these questions were in process of adjudication, the property, which was represented to be deteriorating in value

and yielding no returns, was sold by the consent of all parties, and the proceeds representing such property was retained in the hands of the court, to be distributed or applied in accordance with the judgment of the court as to the relative priorities of the several claimants. The action may, therefore, be regarded as more in the nature of a creditor's bill, though not strictly such, rather than as an ordinary action to foreclose a mortgage of real estate, and so regarded all the grounds upon which it is contended that Mrs. Lide and Miss Gadsden were not proper parties, are clearly untenable. We think, therefore, that the objection raised by the appellant, Rice, even were it originally maintainable, comes too late, for we do not regard it as a question of jurisdiction, but rather as a question of pleading and practice, and, as such, consent of parties operates as a waiver of objections, which, otherwise, might be unanswerable.

But, as the counsel for the appellant, Rice, contended so earnestly against the idea that the agreement, above referred to, should be regarded as a consent on his part to the making of improper parties, we will not rest our decision upon the effect of such agreement. We are satisfied that, even in the absence of any such agreement, Mrs. Lide and Miss Gadsden were *proper*, though not *necessary* parties to the action. There can be no doubt that all prior, as well as subsequent encumbrancers, while not *necessary* are *proper* parties to an action for the foreclosure of a mortgage of real estate, and in order that the land may produce its full value at the sale sought by such action for foreclosure, it is desirable that such encumbrancers should be made parties, for, if the prior encumbrancers are not made parties, the purchaser takes his title subject to the lien of such encumbrancers ; and if the subsequent encumbrancers are not made parties, the purchaser buys subject to the right of such encumbrancers to redeem by paying off the antecedent encumbrances. Now, while a bond creditor of an ancestor cannot be said to have a lien, in the proper sense of that term, upon land in the hands of the heirs, inherited from the ancestor, yet he does have the right, by proper proceedings, to subject such land to the payment of his debt, and this right is called, in *Jones* v. *Wightman*, 2 *Hill* 583, " a constructive lien ;" in *Richardson* v. *Chappell*, 6 *S. C.* 155–6,

2 M

"a charge;" and in *Rogers* v. *Huggins*, 6 *S. C.* 362, "an encumbrance." The same principle, therefore, upon which it has been held that a prior encumbrancer is a proper party to an action for the foreclosure of a mortgage of real estate, would seem to justify the making of a bond creditor of an ancestor a party to an action for the foreclosure of a mortgage on real estate descended, executed by the heir, the object in both cases being the same—to free the land from any lien or " charge," or " constructive lien," or " encumbrance," so that the purchaser, obtaining a perfectly clear title, may be induced to bid the full value of the land.

It is true that it has been held, in the case of *Corning* v. *Smith*, 6 *N. Y.* 85, " that a person who claims *title* to the mortgaged premises, paramount to that of the mortgagor, cannot be made a party to an action to foreclose the mortgage in order that the validity of such title may be tried in such action." But whether this decision rested upon the idea which at one time prevailed, that even under the code it would be improper to unite in one action an application for legal relief with one for equitable relief, which, however, has since been repudiated, (see comments on *Reuben* v. *Joel*, 13 *N. Y.* 488; in the subsequent case of *New York Ice Company* v. *Northwest Insurance Company* 359, and *Pomeroy on Remedies* 95, § 76,) it is necessary for us now to inquire, as the persons who are objected to here as improper parties do not claim *title* to the mortgaged premises adverse to that of the mortgagor, but only claim a right to subject such premises to the payment of their debt, by reason of the fact that it has descended to the mortgagor, subject to a charge for such debt. In other words, they only claim as prior encumbrancers, as it were, by virtue of their constructive lien, as it has been called. We think, therefore, that, aside from any agreement among the parties, Mrs. Lide and Miss Gadsden were proper parties to this action.

The fact that the plaintiffs, after the commencement of the action, announced at one of the references that they " withdrew their claim as against Mrs. Mary A. Lide, B. N. Lide and Miss Anna J. Gadsden," cannot, in our opinion, have the effect contended for, of dismissing complaint as to these parties. This announcement was, doubtless, designed as nothing more than an

admission of the validity of the claims of Mrs. Lide and Miss Gadsden, and a declaration that they declined further to contest them, and it can have no other effect, so far as the question we are considering is concerned. What the effect may be, if, as is contended, they are trustees for Rice, so far as their duties and liabilities to their *cestui que trust* are concerned, we are not now called upon to consider. The plaintiffs certainly could not, of their own motion, at that stage of the case, probably after the land had been sold, dismiss the complaint as to these parties, and thereby imperil, if not defeat, their right to go either upon the land or the proceeds of the sale for the satisfaction of their debts.

The rule in equity is that it is within the discretion of the court to refuse a plaintiff permission to dismiss his bill if the dismissal would work a prejudice to the other parties; and whenever, in the progress of a cause, a defendant entitles himself to a decree, either against the plaintiff or a co-defendant, and the dismissal of the bill would subject him to the expense and trouble of bringing a new suit and making his proofs anew, such dismissal will not be permitted. *Bank* v. *Rose*, 1 *Rich. Eq.* 292; *Ancker* v. *Levy*, 3 *Strob. Eq.* 210.

We propose next to inquire whether the bonds held by Mrs. Lide and Miss Gadsden are mere renewals of the original bonds of the ancestor, or whether such original bonds have been paid or extinguished by the taking of the bonds of the heirs. This, in our judgment, is mainly a question of fact. The rule of law is well established that where a creditor takes an obligation of inferior or equal rank, it does not extinguish, *ipso facto*, the prior obligation, as that only is payment which is intended and accepted as payment. Hence, when a creditor takes a new bond, "in substitution or renewal" of a bond previously held by him, which has been lost or destroyed, the original debt or obligation is not extinguished unless it is made to appear that the creditor accepted such new bond in payment, and the burden of proof is upon him who asserts the fact that the new bond was taken in payment. This doctrine is so fully supported by the authorities in this state that it is only necessary to refer to a few of the cases: *Kelsey* v. *Roseborough*, 3 *Rich.* 244; *Fraser* v. *Hext*, 2 *Strob. Eq.* 258. These cases are entirely consistent with the

subsequent cases of *McLure* v. *Askew*, 5 *Rich. Eq.* 102, and *Kirkland* v. *Cureton*, 4 *S. C.* 122, for, though the substituted securities were, in both of the last-named cases, held to have operated as a satisfaction or extinguishment of the original debts, yet in both of them the decision was placed distinctly upon the ground that *the evidence showed that the papers substituted were accepted in payment of the original debts.* So that so far from weakening, they strengthen the authority of the preceding cases.

The question of fact having been decided by the referee, and his decision having been confirmed by the Circuit judge, their decision must be regarded by us as conclusive, unless it is without any testimony to sustain it, or is manifestly against the weight of the evidence, neither of which is the case in the present instance.

The Lide and Gadsden bonds must, therefore, be regarded as representing the debts of the ancestor, and, as was decided in the recent case of *Simons* v. *Bryce*, 10 *S. C.* 354, are entitled to priority of payment out of the funds now in the hands of the court arising from the sales of the Whitehouse and Greenfield plantations. As it appears, from the report of the referee, that these funds will not be sufficient to pay these bonds in full, it is scarcely necessary to consider the questions raised between the plaintiffs and the defendant, Rice, as they are not now of any practical importance. We may say, however, that we are disposed to agree with the Circuit judge in the view which he has taken of these questions.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

WILLARD, C. J., and HASKELL, A. J., concurred.